

# NUMBER 13-10-00206-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GAY C. DAVIS
A/K/A GAY CAROLYN DAVIS,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

**On appeal from the County Court at Law
of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Gay C. Davis, appeals her conviction for driving while intoxicated, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(a) (West 2003). Following a bench trial, appellant was found guilty and sentenced to 180 days of confinement in the county jail. On appellant's motion for community supervision, the trial court suspended

the imposition of the jail sentence and released appellant on community supervision for a term of 365 days. The trial court also imposed a $2,000 fine, probated to $1,500, plus court costs and a $40 community-supervision fee. By one issue, appellant claims the evidence adduced at trial is legally insufficient to sustain her conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2008, emergency personnel responded to a one-vehicle automobile accident that occurred in broad daylight on a county road. A pick-up truck was on its side in the tree line, with dense brush, power lines, and two fallen utility poles surrounding it. Despite having been warned by a bystander not to crawl through the power lines in case they were "live," appellant crawled through the power lines. The bystander identified appellant as the driver of the truck. According to the bystander, appellant was alone in the truck.

As her ambulance unit arrived at the scene, paramedic Diedre Hernandez saw downed power lines and a vehicle in the brush. Hernandez and her partner, Ray Vargas, saw appellant barefoot and running toward them, away from the accident scene. It appeared appellant intended to run past their ambulance unit, so Hernandez and Vargas pursued her. Appellant was agitated and admitted to Hernandez and Vargas she had been involved in the auto accident while traveling alone in the now-wrecked pick-up. Hernandez could not recall whether appellant smelled like alcohol at the scene, but she testified appellant was rambling about various topics such as trust, her mother, and her childhood. Hernandez testified that when asked if she would like to go to the hospital, appellant answered, "Just shoot me." Appellant admitted to Hernandez that on the

2

morning of the accident she had taken two medications, one of which was Lorazepam, which Hernandez identified as a benzodiazepine, and also consumed "two fingers" of alcohol. Hernandez testified the auto accident happened before lunch time.

Paramedic Kartney Nunez arrived at the scene in a second ambulance unit. She testified appellant was rambling at the scene about her broken heart, her mother, and a hair-lipped woman. Nunez testified appellant declined any medical treatment, including routine precautions to protect against possible spinal injury, and declined multiple offers to be taken to a hospital for examination. Nunez testified appellant admitted to her at the scene that she "had been drinking" and had taken "some medications" prior to the auto accident.

Trooper Samuel Cody Lankford of the Texas Department of Public Safety also went to the scene and testified at trial. Lankford testified that as a trooper, he received specialized training on identifying intoxicated individuals. Lankford testified he is certified to administer field-sobriety tests. Lankford first made contact with appellant in an ambulance unit and he observed that her eyes were "very, very red," her breath smelled of alcohol, and she was not speaking clearly. Lankford testified appellant's "thoughts seemed to be very disconnected" and described appellant's speech as "rambling" and "off topic." Lankford testified appellant admitted to him at the scene that prior to driving, she drank Tarantula, which he determined was a brand of tequila, and took two medications, Lexapro and Lorazepam.

Appellant was unsteady on her feet as Lankford walked with her to his patrol car. Because appellant was barefoot and the pavement was hot, Lankford decided against

3

administering any field-sobriety tests that would require appellant to stand outside. When Lankford placed appellant in his patrol car, she "immediately leaned the seat back and started to pass out . . . There were several times in the car she just seemed to drift off and fade away." This is documented in a video of appellant in the patrol car, which was admitted in evidence at trial without objection. In the video, appellant could not recite the alphabet correctly when Lankford asked her to do so. She also failed a finger-count test Lankford administered. Lankford testified that these tests are alternative sobriety tests to those performed outside. Lankford requested a blood sample from appellant, but she refused to give one. Lankford testified that after observing appellant and talking with her at the scene, he formed the opinion that she did not have the normal use of her mental or physical faculties as a result of ingesting alcohol and medication.

Deputy Ronnie Lee Huegler, Sr. of the San Patricio County Sherriff's Department transported appellant to a hospital for a medical examination required prior to jail intake. Huegler testified that he smelled the odor of alcohol on appellant's breath and that even though he made no attempt to interrogate appellant, she showed "[v]ery, very radical mood swings" in normal conversation. He specified that within a span of five minutes appellant would converse normally, cry, become angry, and then converse normally again. In the course of their conversation, appellant volunteered personal history and admitted to Huegler that she had consumed alcohol and then drove. Huegler testified he believed appellant also told him she had consumed prescription medication. According to Huegler's testimony, he spent about forty-five minutes in his patrol car with appellant driving her to the hospital and then to the county jail. Based on his field experience

observing intoxicated persons, Huegler testified appellant exhibited a "heavy intoxication level" during his interaction with her. He concluded appellant was intoxicated to the extent she did not "have the normal use of her mental or physical faculties."

Appellant arrived at the jail at about 5:00 p.m. Lankford testified that at the jail, appellant was uncooperative and still "very out of it . . . [p]retty much like she was on the scene." When Lankford attempted to complete jail-intake paperwork with appellant, she asked to be taken "out and shot in the head, as she no longer had any reason to live."

Appellant was charged by information with driving while intoxicated and subsequently convicted. This appeal followed.

## II. ANALYSIS AND DISCUSSION

By her sole issue on appeal, appellant argues the evidence is legally insufficient to show she was intoxicated at the time she was driving. Appellant argues that to meet its burden of proof, the State needed evidence of the amount of time that elapsed between the accident and the arrival of law enforcement at the scene. Appellant also argues her admission that she had been driving the truck is insufficient to establish that she drove while intoxicated, absent corroborating evidence that she was the driver.

### 1. Standard of Review for Legal Sufficiency

The Texas Court of Criminal Appeals has determined that the *Jackson v. Virginia* legal-sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). Thus, we do not refer

separately to legal or factual sufficiency and we will review the evidence under the *Jackson v. Virginia* standard as summarized below.

Evidence is insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)). In evaluating a legal-sufficiency challenge, we consider all of the evidence and view it in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (citing *Jackson*, 443 U.S. at 319).

## 2. The Elements of Driving While Intoxicated

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). A person is considered intoxicated if that person does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances or any other substance into the body or by having an alcohol concentration above 0.08 or more in his breath, blood, or urine. *Id.* § 49.01(2)(A)–(B) (West 2003).

## 3. The Legal Sufficiency of the Evidence

Appellant relies for her argument on *Scillitani v. State* and cases cited therein. 297 S.W.3d 498, 500–01 (Tex. App.—Houston [14th Dist.] 2009), *vacated by* 315 S.W.3d 542 (per curiam). The Court of Criminal Appeals however, vacated the Fourteenth Court of Appeals's judgment and remanded *Scillitani* for reconsideration in light of *Kuciemba v. State,* 310 S.W.3d 460 (Tex. Crim. App. 2010). *See Scillitani*, 315 S.W.3d at 542. In *Kuciemba,* the court retained the requirement of showing a temporal link between the defendant's driving and the intoxication, but held that circumstantial evidence alone can

7

establish this link. *Kuciemba*, 310 S.W.3d at 462. In *Kuciemba*, the defendant was involved in a one-car accident and the State presented no testimony describing his driving before the accident or establishing how soon after the accident emergency responders arrived. *Id.* The court held that "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Id.* The record contained evidence that the defendant smelled of alcohol, was unsteady on his feet, and his eyes were bloodshot. *Id.* at 461. The court concluded that the defendant's presence behind the steering wheel and his high level of intoxication were evidence of the offense. *Id.* at 462.

In this case, as in *Kuciemba*, evidence establishing the amount of time that passed between the accident and arrival of law enforcement is not essential to allow a reasonable fact finder to conclude that appellant drove while intoxicated. This case involves a one-car accident with inanimate objects. As summarized above, appellant admitted multiple times that she had been driving the truck. A bystander identified appellant as the driver of the truck and said that she crossed through downed power lines before running away from the accident scene. Appellant failed two field-sobriety tests and admitted she consumed tequila and two prescription medications before driving. Like the defendant in *Kuciemba*, appellant had red eyes, her breath smelled of alcohol, and she was unsteady on her feet. *See id.* Trooper Lankford and Deputy Huegler concluded that, based on their respective training and experience, appellant was

8

intoxicated. Appellant still appeared intoxicated when she arrived at the jail several hours after the accident. Based on the evidence in the record, a rational fact finder could conclude beyond a reasonable doubt that appellant drove while intoxicated. *See id.* at 462–63; *see also Zavala v. State*, 89 S.W.3d 134, 139–40 (Tex. App.—Corpus Christi 2002, no pet.).

## III. CONCLUSION

Because the evidence is legally sufficient to sustain appellant's conviction, we overrule her sole issue on appeal and affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of June, 2011.

9