

# NUMBER 13-11-00477-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

---

**ADELAIDA REYNA ARELLANO,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 206th District Court
### of Hidalgo County, Texas

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant, Adelaida Reyna Arellano, appeals her conviction for forgery by making a check, a state-jail felony. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A), (b), (d) (West 2011). Following a bench trial, appellant was found guilty and sentenced to 180 days of confinement in the Texas Department of Criminal Justice—State Jail Division. The trial

court suspended the imposition of sentence and placed appellant on community supervision for a period of two years. The trial court ordered appellant to pay $100.00 in restitution and $333.00 in court costs. By two issues on appeal, appellant argues the evidence is "legally insufficient" to show: (1) appellant altered the check; and (2) appellant intended to defraud another. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 2010, the complainant, Evangelina Guerrero, gave appellant a check in the amount of $15.00, payable to appellant, to reimburse her for purchasing tamales and a luncheon plate. Appellant and Guerrero worked in the same office.

Later, while reviewing their bank statement, Guerrero's husband noticed that a check had apparently been written to appellant for the incorrect amount of $115.00. Guerrero looked at her duplicate check and realized someone must have altered the original check. The duplicate check showed that "15.00" was the sum listed in the "item amount" box, followed by the written words "Fifteen and no/cents."

Guerrero called appellant and asked what amount the check was cashed for. Appellant answered, "[w]hatever you made it out for." Appellant told Guerrero she gave the check to her husband and that he deposited it with his own checks in Weslaco. Guerrero informed appellant that she had written the check for $15.00, but that it was cashed for $115.00, and that she still had her duplicate check. Appellant "went quiet," and then told Guerrero that she would go to the bank in the morning and "take care of it." Appellant never told Guerrero that she lost the check or that anything happened to it after Guerrero gave it to her.

2

The next day, Guerrero took her duplicate check to First National Bank in McAllen, Texas, and stated she wrote the check for $15.00, but that it was cashed for $115.00. A bank employee looked up Guerrero's and appellant's bank accounts, and discovered that the deposit slip was made out for $115.00, and that the deposit was made in McAllen, not in Weslaco. The bank manager, Francisco Torres, advised Guerrero that she needed to file a police report. Guerrero went to the police department in McAllen and provided a statement. Guerrero was advised to inform her employer about the incident and to meet with Torres at the bank to fill out a fraud report.

The following Monday, appellant brought Guerrero the sum of $100.00 in cash. Appellant placed the money on Guerrero's desk and stated it was merely a "bank error."

On August 30, 2010, appellant was arrested for forgery. Appellant pleaded "not guilty" and waived her right to a jury trial. During the bench trial, Guerrero testified she recognized her signature on the check. She stated she made the check out for the sum of $15.00, but that it was altered to read $115.00. Guerrero testified the number "1" had been inserted in front of the number "15," and the word "one" had been written in front of the amount for "fifteen" dollars. Guerrero testified these alterations were not in her handwriting. Guerrero further testified she had previously written many checks in an amount over one-hundred dollars and that she customarily wrote out the words "one hundred." Guerrero stated she recognized appellant's signature on the endorsement.

Ginno Betancourt, the teller at First National Bank who processed the forged check, testified the deposit slip belonged to appellant. The deposit slip was dated July 20, 2010. No cash was given to appellant. Betancourt testified he only looks at

3

customers in the drive-through to identify the customer if the customer is receiving cash; consequently, he never saw appellant or the vehicle she was driving. The record shows Betancourt and appellant had no prior relationship with one another.

Detective Rene Hernandez, with the McAllen Police Department, testified he reviewed a copy of the altered check, the duplicate carbon copy of the check, and the deposit slip. He noticed the account number underneath appellant's endorsement on the back of the forged check was written with a unique pen stroke. "[T]he numbers were written in a—in a manner that whoever wrote this number left a—I guess you could say a little motion to the right from the bottom of the number going in an upward to the right motion." He also noticed the number "1" on the deposit slip was written in the same manner. He concluded the same person filled out the deposit slip and endorsed the back of the check.

Detective Hernandez testified appellant visited the McAllen Police Department to discuss the case with him. She had a worried look on her face when questioned about the altered check. Appellant told Detective Hernandez that she had been having an affair and that it was this person who altered the check. The two of them allegedly met at the K-Mart parking lot next to the bank and started to argue. The man asked if she wanted him to deposit the check. Appellant informed Detective Hernandez that she had already endorsed the check, written out her name, and written her account number on the back of the check. Detective Hernandez asked if she had filled out the deposit slip. Appellant said no. Rather, the man took the check and deposit slip away from her and filled out the deposit slip. Appellant let him take the check and make the deposit. They

4

then went their separate ways. Appellant told Detective Hernandez that she later received a phone call from the man and that he told her, "You know what, don't [ . . . ] with me," and then hung up. A few days later appellant received a phone call from Guerrero advising her of the amount of money that was actually deposited.

Detective Hernandez testified he gave appellant several opportunities to provide him with information about the man so he could confirm her story. He asked her to provide a name, address, and phone number. Appellant indicated she did not want to get the man involved. She finally told him that his name is "Robert Crocker" and that Crocker was a truck driver from the Austin area. She did not want to give Detective Hernandez his phone number or any other information so Detective Hernandez could verify his identity. Based on the limited amount of information appellant gave him, Detective Hernandez was only able to run a local check. He could not find anyone in the area with the name Robert Crocker.

Detective Hernandez testified he contacted the bank to find out if there was video surveillance of the transaction. The bank provided him with a video, but he could not determine whether the time on the video matched the time stamped on the check. The video was of such poor quality that the two individuals inside the vehicle were not visible. He could not confirm the make or model of the vehicle. Detective Hernandez guessed that the vehicle was a Chrysler 300. Appellant told Detective Hernandez that Crocker drove a white Camry and that she drove a gray Ford Escape.

Appellant testified she received a check from Guerrero in the amount of $15.00 for food she had purchased. Appellant denied she altered the face of the check by writing a

5

"1" in front of the "15." She further testified she would not risk her career and her livelihood for $100.00.

Appellant testified she first met Crocker about a year before on a flight to Austin. She described him as being of "average" height "[f]ive four, five six, something like that." Crocker asked for her business card, and she gave it to him. She received a phone call from Crocker about two weeks later. According to appellant, her affair lasted about a year. She met with him three or four different times, and they had intimate relations. Crocker gave her a small pendant and a computer. She did not have his address and did not know where he lived. She would wait for him to call her.

Appellant testified that prior to the day the check was deposited, she told Crocker that she did not want to see him anymore. A few days before the incident occurred, Crocker allegedly called appellant and said "he was going to be down" and asked her to meet with him. Appellant claimed she decided to meet with him to give him back his things. She left the office ten or fifteen minutes early on Wednesday and waited for him at the K-Mart parking lot. While she was waiting, she pulled out the check, took out her checkbook, and tore out a deposit slip. Crocker arrived at that point and entered her vehicle on the passenger side. Appellant claimed that Crocker attempted to place his hand on her leg multiple times, she pushed him away, he cursed at her, and they got into an argument. He then grabbed the check and deposit slip and said, "What is this?" She told him that she was going to the bank and asked him to give the check and deposit slip back to her.

Appellant testified that they continued to argue. She told Crocker to get out of the

truck. Crocker exited the vehicle, stood at the door, and said, "Don't mess with me." Crocker opened the back door, entered the back of the vehicle, and pulled out "six, seven, or eight" intimate pictures of the two of them together. She did not know the pictures existed, and she was shocked. Appellant attempted to take the pictures away from Crocker, but he grabbed her arm and refused to give her the pictures. She told him to get out of the truck, and he responded, "I thought you were going to the bank." She told him that she just wanted to go home. Crocker then grabbed her arm and said, "You're going to the bank." Appellant drove to the bank because she was afraid and felt that Crocker was forcing her to do so. Crocker made comments about the pictures as they drove to the bank and said he was going to show the photographs to her husband and her co-workers.

Appellant testified that when they arrived at the bank, she asked for "her things" back, so she could "send them in." Appellant said Crocker must have filled out the deposit slip:

> And—and all he did was he kind of like snapped—slapped them like this on the—on the center portion of my truck. And all he said was—was I've already done it. I—you know, just—just send them in. Just—I think that's what—how he said, just send them in. Or something like that. But anyway, so I didn't—I mean, I knew I had already—I signed the check at the office.

Appellant testified she did not look at the check or the deposit slip prior to making the deposit and that she did not realize the check had been altered. Appellant admitted she received a receipt from the bank after she deposited the check. She did not look at the receipt and did not know what happened to it. She then drove Crocker to his car and left when he exited her vehicle.

7

Appellant admitted she told Guerrero that a bank error had occurred, but insists she did not lie because, initially, she believed it was a bank error. Appellant, however, also testified she did not contact the bank about the error because she "figured that [Crocker] had done something." Appellant did not contact the police after she realized the check had been forged.

## II.  STANDARD OF REVIEW

Evidence is insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 906–07 & 912 (Tex. Crim. App. 2010) (plurality op.); *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307 (1979)). In evaluating a sufficiency challenge, we consider all of the evidence and view it in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).

The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the

8

prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997) (citing *Jackson*, 443 U.S. at 319).

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Kuciemba v. State,* 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A fact-finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact-finder to decide which inference is most reasonable. *Laster v. State,* 275 S.W.3d 512, 523 (Tex. Crim. App. 2009). We "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16–17.

### III.  ANALYSIS

We will address appellant's sufficiency issues together because they are based on a single set of facts. *See* TEX. R. APP. P. 47.1. In support of her issues, appellant argues Detective Hernandez's handwriting comparison must be excluded in assessing the sufficiency of the evidence because she denied under oath that the alterations on the face of the check were her handwriting. *See* TEX. CODE CRIM. PROC. ANN. art. 38.27 (West 2005). By her first issue, appellant argues that without the handwriting comparison testimony, the evidence does not show she made any changes to the face of

9

the check, and that proof she lawfully possessed the check and deposited it is insufficient to show she made a forged writing. By her second issue, appellant argues that without the handwriting comparison testimony, there is no evidence to show she intended to defraud another because the evidence does not show she knew the check was altered when she deposited it.

To measure the sufficiency of the evidence, we use the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A person commits the offense of forgery if, with the intent to defraud another, she makes a writing so that it purports to be the act of another who did not authorize the act. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A), (b) (West 2011).

## A. Must We Exclude the Handwriting Evidence from Our Review?

We disagree with appellant's argument that we may not consider the handwriting comparison evidence in assessing the sufficiency of the evidence. Article 38.27 of the Texas Code of Criminal Procedure requires that handwriting comparison evidence be corroborated when a witness denies his handwriting under oath:

> It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison *only* shall not be sufficient to establish the handwriting of a witness who denies his signature under oath.

10

TEX. CODE CRIM. PROC. ANN. art. 38.27 (emphasis added). Under article 38.27, the proof of handwriting may be established by a comparison of documents performed either by experts or by the jury. *Id.*; *Logan v. State,* 48 S.W.3d 296, 301 (Tex. App.—Texarkana 2001), *aff'd*, 89 S.W.3d 619 (Tex. Crim. App. 2002). In a nonjury trial, such as the one in this case, article 38.27 authorizes the trial court to compare handwriting on documents to determine the authorship of the handwriting in question. *See Herndon v. State,* 543 S.W.2d 109, 118 (Tex. Crim. App. 1976).

Under article 38.27, "if a defendant denies either his signature or his handwriting under oath, then the State must present other evidence tending to connect the defendant to the authorship of the disputed" writing. *Camacho v. State*, 765 S.W.2d 431, 434 (Tex. Crim. App. 1989) (concluding evidence was insufficient to support murder conviction after defendant denied under oath he wrote the unsigned note found with the body; no other evidence corroborated his identity as the murderer). When a defendant denies his handwriting under oath, the handwriting comparison is not automatically excluded from consideration; rather, the comparison must be corroborated by other evidence if the comparison evidence is to be considered. *See id.*; *Cadd v. State*, 587 S.W.2d 736, 740 (Tex. Crim. App. 1979) (en banc) (citing *Newby v. State*, 384 S.W.2d 133 (Tex. Crim. App. 1964)); *see also Mascorro v. State*, No. 13-11-00112-CR, 2011 WL 3840509, at *3 (Tex. App.—Corpus Christi, Aug. 29, 2011, no pet.) (mem. op., not designated for publication) (concluding defendant's care, custody, and control over the writing sufficiently corroborated handwriting comparison testimony under article 38.27).

11

Here, even though appellant denied under oath that she altered the amount of the check, the State's circumstantial evidence gave rise to a reasonable inference that appellant had exclusive possession of the check and that she altered and deposited it into her account on same day she received it. *See Hooper*, 214 S.W.3d at 16 (explaining the *Jackson* sufficiency standard allows the fact-finder to make reasonable inferences from the evidence); *Clayton*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007) (holding a rational jury could have inferred from the evidence presented that defendant lied about his involvement with the victim's death). Inasmuch as the handwriting comparison evidence was corroborated by evidence showing appellant's consciousness of guilt and evidence appellant exercised exclusive possession of the check between the time she received it and the time she deposited it, we may consider the handwriting comparison evidence in our sufficiency analysis. *See Camacho*, 765 S.W.2d at 434.

**B. Is the Evidence Sufficient to Sustain Appellant's Forgery Conviction?**

The trial court was presented with two conflicting evidentiary theories—the State's and appellant's. The trial court was able to assess the credibility and demeanor of the witnesses who testified at trial, and significantly, the trial court was able to assess appellant's credibility and demeanor when she explained how the check was altered and deposited into her bank account. *See Clayton*, 235 S.W.3d at 779; *Fuentes*, 991 S.W.2d at 271. From the trial court's judgment, it is clear the court rejected appellant's exculpatory explanations. With these things in mind, we consider the evidence in the light most favorable to the verdict. *See Clayton*, 235 S.W.3d at 780 (demonstrating the sufficiency of circumstantial evidence under *Jackson* standard).

12

The record shows appellant gave contradictory explanations concerning why the check was cashed for $115.00 instead of $15.00. Appellant initially told Guerrero that her husband deposited the check in Weslaco, but she later admitted it was deposited in McAllen, and the evidence shows it was deposited in McAllen. The Monday after Guerrero confronted appellant, appellant told Guerrero it was a "bank error" and without further explanation returned $100 to Guerrero at work. Appellant told Detective Hernandez that Crocker completed the deposit slip and made the deposit without her. But, at trial, appellant testified Crocker completed the deposit slip and handed it to her from the backseat of her vehicle to deposit in the drive-thru lane at the bank in McAllen.

A fact-finder may infer a consciousness of guilt from a defendant's changing story about the crime and the surrounding circumstances. *Couchman v. State*, 3 S.W.3d 155, 163–64 (Tex. App.—Fort Worth 1993, pet. ref'd). "A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt." *Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet. ref'd.) (quoting *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.)). "It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as a circumstance tending to prove that he committed the act with which he is charged." *Torres*, 794 S.W.2d at 598 (internal quotations omitted).

The trial court could have reasonably inferred from appellant's changing story that she lied about how the check was altered and deposited into her account because she had something to hide. *See Couchman*, 3 S.W.3d at 164. While appellant urges this

13

court to conclude she initially lied to conceal her affair with Crocker, in each explanation she offered she distanced herself from the crime, and once she revealed the alleged affair, she still gave contradictory accounts of Crocker's involvement, all of which distanced appellant from the alteration of the check and subsequent deposit.

Appellant admitted in her testimony that she endorsed the check by signing the back of it and writing her account number under her signature. Consistent with Detective Hernandez's handwriting comparison testimony, the record shows appellant's pen stroke on the numeral "1" in her account number bears a unique hook on the bottom, right-hand side of the number. Although appellant claimed Crocker filled out the deposit slip, the number "1", as it appears on the deposit slip, bears the same unique pen stroke as appears in appellant's account number. The number "1" written on the face of the complainant's check to increase the amount to "$115.00," does not bear this unique pen stroke, but does match the "1" the complainant wrote on the check.

The trial court could reasonably infer from the evidence that Crocker was not involved in this crime and that appellant was in exclusive possession of the check between the time Guerrero gave it to her and the time she deposited it—appellant received and deposited the check the same day. Because appellant was in exclusive possession of the check in the relevant time frame, it was rational to conclude from her exclusive possession and her conduct after being confronted that she was the one who altered the check.

Treating her own trial testimony as true and attributing her prior inconsistent statements to a desire to conceal the affair, appellant urges this court to find the evidence

14

insufficient on the basis it merely shows she lawfully possessed the check and deposited it at the bank without knowledge of the forgery. Appellant's position, however, disregards the fact-finder's role in determining the credibility of the witnesses and making reasonable inferences based on the evidence presented. *See Fuentes*, 991 S.W.2d at 271; *Hooper*, 214 S.W.3d at 16–17.

Moreover, the cases appellant relies on to support her argument that the evidence only shows lawful possession and innocent deposit are factually distinguishable. Appellant relies heavily on *Davis v. State*, 297 S.W.2d 845, 846–47 (Tex. 1957), and *Taylor v. State*, 626 S.W.2d 543, 545 (Tex. App.—Amarillo 1981, pet. ref'd), to argue the evidence is insufficient to show she altered the face of the check. In *Davis*, the defendant worked as a supervisor for an insurance company and was charged with forgery by endorsement. 297 S.W.2d at 845. A check for payment on a claim was made out to the insured, Mabel B. Davis, but she never received it, and she later recognized the endorsement on the check to be a forgery. *Id.* Although the State presented testimony from two handwriting experts that the endorsement was made in the defendant's handwriting, there was no other evidence in the record to show the defendant made the endorsement and he denied under oath he endorsed the check. *Id.* at 846–47. The record showed the defendant had possession of the check at one time, but it did not show whether he possessed it at the time it was endorsed, as other people in the office had access to the check, and in the past, other checks had been misplaced. *Id.* at 846. The bank teller testified she did not recall cashing the check, but that in the ordinary course of business, she would not have cashed the check without the defendant first

15

endorsing it. *Id.* Finding no evidence to corroborate the handwriting comparison testimony, the Court of Criminal Appeals held the evidence was insufficient to support the defendant's conviction for forgery by endorsement. *See id.* at 847.

In *Taylor*, the defendant passed an altered one-dollar bill to a gas-station attendant to pay for gas. 626 S.W.2d at 544. The number "5" had been pasted in the relevant places on the bill to make it look like a five-dollar bill. *Id.* The Sixth Court of Appeals concluded the evidence was insufficient to show forgery by altering a writing because there was no evidence the defendant was the one who altered the dollar bill. *Id.* at 545. Applying the reasonable alternative hypothesis construct, the appellate court concluded the driver of the vehicle which appellant was in or "any one of a number of other persons might just as likely have altered the one dollar bill."[1] *Id.*

Here, unlike the defendant in *Davis* who could not be linked to the endorsement on the check, appellant admitted she endorsed the check, and the evidence shows she deposited it. Unlike *Davis* and *Taylor*, viewed in the light most favorable to the verdict, the evidence in this case shows appellant had exclusive possession of the instrument at

---

[1] In her brief, appellant argues the "reasonable alternative hypothesis" construct applied in *Taylor v. State* was later abolished and explained that the present case does not concern excluding reasonable alternative hypotheses. *See* 626 S.W.2d 543 (Tex. App.—Amarillo 1981, pet. ref'd). During oral argument, appellant argued the Court of Criminal Appeals's *Brooks v. State* decision reinstated the construct by setting forth that legal and factual sufficiency review are the same. *See* 323 S.W.3d 893, 906–07 (Tex. Crim. App. 2010) (plurality op.). As this sub-issue was not raised in appellant's brief, we need not reach it. *See* TEX. R. APP. P. 38.1(f). However, we note that this case does not present a "reasonable alternative hypothesis" when analyzed under the *Jackson* standard. *See Brooks*, 323 S.W.3d at 906–07 (explaining a jury is not permitted to irrationally disregard evidence under the *Jackson* standard). We also note that citing *Brooks*, the Court of Criminal Appeals recently held that the reasonable alternative hypothesis construct does not apply in a sufficiency review under the *Jackson* standard because the construct was overruled. *See Cortez v. State*, No. AP-76101, 2011 WL 4088105, at *1 (Tex. Crim. App. Sept. 14, 2011) (not designated for publication) (citing *Geesa v. State*, 820 S.W.2d 154, 155 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000)).

the time it was altered and that only appellant possessed the check between the time she received it and the time she deposited it.

Appellant also relies on *Crittenden v. State*, 671 S.W.2d 527, 527–28 (Tex. Crim. App. 1984) (en banc), and *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex. Crim. App. 1977), to argue the evidence is insufficient to show she acted with intent to defraud another. We find these cases factually distinguishable as well. In *Crittenden*, the Court concluded the evidence was insufficient to show intent to defraud or harm when the defendant claimed he received the check in the mail, there was no evidence he possessed the check when it was altered, he made no statement from which it could be inferred he knew the check was forged, and there was no handwriting evidence against the defendant. 671 S.W.2d at 527–28. Similarly, in *Stuebgen*, the defendant made no statements from which it could be inferred he knew the check was forged when he deposited it and there was no evidence to show the defendant's writing appeared on the forged check that appeared to be from his employer. 547 S.W.2d at 32. The Court in *Stuebgen* concluded the defendant's access to his employer's checkbook and the fact he passed the forged check were insufficient to show the defendant acted with intent to defraud. *Id.* at 32–33. In this case, unlike *Crittenden* and *Stuebgen*, appellant's contradictory statements gave rise to an inference of guilt, and the handwriting on the deposit slip matched the endorsement appellant admitted she made on the back of the check.

We agree with the State that this case is more like *Ussery v. State,* in which the defendant received and cashed a paycheck on the same day. 635 S.W.2d 425, 426 (Tex. App.—Fort Worth 1982, no pet.). In *Ussery*, the check was written for $17.24, but

17

when cashed at a grocery store, the numbers had been altered to show $99.24.  *Id.* The defendant received $99.24 from the store clerk.  *Id.*  Like the duplicate check in the case at bar, an imprint of the check created when the defendant's employer wrote the check showed that it was written for $17.24.  *Id.*  Based on the defendant's exclusive possession of the check between the time he received it and the time he cashed it, and the fact he knew or should have known that amount would have been an excessive payment, the appellate court concluded the evidence was sufficient to support the defendant's forgery conviction.  *Id.*

We conclude the cumulative force of the evidence was sufficient to find appellant guilty beyond a reasonable doubt of forgery by making a check.  *See Clayton*, 235 S.W.3d at 778–82; *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).  We overrule appellant's first and second issues.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish.   TEX. R. APP. P. 47.2(B).

Delivered and filed the
8th day of March, 2012.

18