**Chester Lee WICKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68821.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 29, 1984.

Rehearing Denied April 18, 1984.

---

Robert G. Coltzer, Galveston, David E. Garner, League City, for appellant.

Michael J. Guarino, Dist. Atty. and Jack Brock, David P. Walker and Miguel Martinez, Asst. Dist. Attys., Galveston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for capital murder. The jury answered the punishment stage questions under Article 37.071(b), V.A.C.C.P., affirmatively and punishment was assessed at death.

Appellant was charged with having intentionally and knowingly caused the death of a young woman by choking her with his hands and by burying her alive. The facts show that on April 4, 1980, appellant abducted the victim from a shopping center in Beaumont and took her to an isolated location near the beach in Galveston County. As they neared the beach, the victim leapt from the car in an attempt to escape. As appellant grabbed for her he lost control of the car and the car ran off the road. Appellant went back to where the victim lay, picked her up and carried her into the sand dunes adjacent to the beach. He dug a shallow hole in the sand and choked the victim until he thought she was dead. He then rolled her into the hole and covered her with sand.

Four grounds of error are urged on appeal. In his first ground appellant argues that the trial court committed reversible error by failing to sustain his motion to suppress two written statements and one oral statement given after his arrest. Appellant made a total of three oral statements and two written statements after his arrest. The first written statement was given in Beaumont and the second written statement was given in Galveston. It was appellant's second oral statement which led to the discovery of the victim's body. Only the written Galveston statement was introduced at trial. Appellant maintains that the Galveston confession and all evidence from the discovery of the victim's body should have been suppressed because he was illegally arrested under the authority of a warrant based upon insufficient probable cause.

Initially, we observe that it is not necessary to decide the issue of whether appellant's arrest was illegal. The Galveston confession was given five days after the arrest, and after appellant had been indicted by a Galveston County grand jury. This fact of indictment was sufficient independent cause for appellant's detention at the time he gave the confession in Galveston,[1] and therefore removed the possibility

---

1. Speaking in a different context about the consequences of the return of an indictment, the Court in *Harris v. State,* 457 S.W.2d 903, 907 (Tex.Cr.App.1970), stated:

    "Though the preliminary hearing provided for in Article 16.01, V.A.C.C.P., may be a practical tool for discovery by the defendant, the primary justification for its existence is to protect the innocent defendant from incarceration on a totally baseless accusation.[1] Therefore, before the accused may be held for grand jury action, our statutes require the prosecution to justify his incarceration by proving in an examining trial before a magistrate that there is probable cause to believe the accused committed the offense charged.

that the arrest five days earlier could have tainted that confession.

Alternatively, even if appellant had not been indicted prior to the Galveston confession and even if the original arrest was illegal, the facts show no taint.

Appellant was arrested at the Houston bus terminal about 11:50 p.m. on April 21, 1980, upon his return from California. Appellant was advised of his Miranda warnings and placed in a car to be taken back to Beaumont. During the trip, appellant agreed to show the officers where the body was located after they confronted him with the information they had gathered. The officers and appellant drove directly to the beach, but were unsuccessful in locating the body. The officers took appellant to the Jefferson County courthouse where he signed the Beaumont written statement about 4:30 a.m. Appellant was then booked and returned to the beach where he gave oral statement number two. As a direct result of oral statement number two, the body of the victim was found. Appellant was returned to Beaumont and taken before a magistrate at 8:35 a.m. Appellant asked to call his mother and was permitted to do so. On the same day two attorneys requested to see appellant and were allowed to visit with him. The next day, April 23, 1980, appellant's family requested to see him and were permitted to visit him. After these visits, appellant made oral statement number three to a Beaumont detective.

On April 24, 1980, Galveston County officers took custody of appellant under a capias issued pursuant to a capital murder indictment handed down by the Galveston County grand jury. On April 25, 1980, appellant received magistrate warnings by a Galveston County justice of the peace.

Appellant asked to see a psychiatrist and one was appointed by the trial court. On April 26, 1980, a psychiatrist visited with appellant for over two hours and at the conclusion of the visit appellant indicated he desired to give a written statement. Appellant was administered all warnings in accordance with Art. 15.17 and Art. 38.22, V.A.C.C.P., and then gave the Galveston written statement which was the only statement introduced into evidence at trial.

At the hearing on the motion to suppress, the trial court found that the original arrest was illegal because it was based upon an affidavit which did not show sufficient probable cause under the two-prong test in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The trial court found, however, that the Beaumont written statement, the Galveston written statement and oral statement number two were admissible because there was no causal connection between the arrest and the statements. Appellant testified that on the way to Beaumont he told the officers that he did not wish to incriminate himself by giving them information about the. body until he talked to his lawyer and his mother. As a result of his unwillingness to tell where the body was located, appellant stated that the officers pulled the car over, bent his fingers, threatened to shoot him in the head and mutilate his genitals and that one of the officers hit him on the head and choked him until he could not breathe. This testimony directly controverted the testimony given by the arresting officers. Appellant did testify that his intention in returning from California was to tell the police where the body was located.

The State presented evidence that the body would have been discovered even if

Article 16.17, V.A.C.C.P. See also *Barrett v. United States,* 270 F.2d 772, 775 (8th Cir.1959). If the grand jury returns a true bill prior to the time that an examining trial is held, the principal purpose and justification of such hearing has been satisfied. See *Vincent v. United States,* 337 F.2d 891 (8th Cir.), cert. den. 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281. Action by a grand jury in returning the indictment supersedes the complaint procedure and eliminates the necessity of an examining trial. *Jaben v. United States,* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345; *State v. Wigglesworth,* 18 Ohio St.2d 171, 248 N.E.2d 607." (footnote omitted)

Similarly, action by the grand jury in returning the indictment superseded the arrest warrant as the basis for appellant's detention in this case and eliminated the issue of the existence of probable cause for that warrant.

appellant had not cooperated after his arrest. The body was partially uncovered and exposed when it was found. An officer for the Galveston County Sheriff's Office testified that the area where the body was found was a public beach and would have become riddled by beachcombers in May. Officers testified that the search for the body would have continued if appellant had not cooperated.

The Beaumont written statement and oral statement number two were not introduced at trial. The question of the voluntariness and the events surrounding their taking is before us only to the extent that they could have tainted the Galveston written statement. *McMahon v. State,* 582 S.W.2d 786, 790 (Tex.Cr.App.1978); *Ex parte Parker,* 485 S.W.2d 585, 589 (Tex.Cr. App.1972). Appellant contends that the Galveston written confession is tainted by the illegality of the arrest and prior confessions under the reasoning of the "fruits of the poisonous tree" theory set out in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 91 L.Ed.2d 441 (1963).

▮ The fruit of the poisonous tree doctrine is not applicable, however, when knowledge or possession of the evidence in question is obtained from a source independent of the state's wrongful act. *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). The standard for determining whether the source of evidence is sufficiently independent of the illegality so as to avoid its taint was set forth in *Wong Sun v. United States,* supra:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal action of the police. Rather, the more apt question in such a case is 'whether, granting the establishment of the illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. 371 U.S. at 487–488, 83 S.Ct. at 417. The statements made by appellant must have been a sufficient act of free will so as

to purge the primary taint. Whether the taint has been purged must be determined on the facts of each case after considering such matters as the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

▮ In the present case, five days had elapsed from the time of appellant's arrest to his signing of the Galveston written statement. Appellant was allowed to consult with attorneys, his mother, his family and a psychiatrist between the time of his first written statement and his second. Appellant's testimony and the State's testimony regarding the circumstances of the Beaumont written confession and oral statement number two are in extreme conflict. One of the two versions simply did not happen. The trial court as the sole judge of the credibility of the witnesses was entitled to disbelieve appellant's version. *Rumbaugh v. State,* 629 S.W.2d 747, 751 (Tex.Cr.App.1982). The Galveston written statement was not the result of exploitation of the arrest and prior statements. We find no causal relationship between the prior statements and the written statement admitted at trial. *Coleman v. State,* 643 S.W.2d 947, 949 (Tex.Cr.App. 1982); *Autry v. State,* 626 S.W.2d 758, 765 (Tex.Cr.App.1982). We find no error in the court admitting the Galveston written statement.

▮ Despite the admissibility of the Galveston written confession, however, it was appellant's oral statement number two which led to the discovery of the victim's body. Appellant claims that all evidence relating to the body should have been excluded since the statement was given shortly after his arrest and was not an act of free will sufficient to purge the primary taint of his illegal arrest. It is unnecessary to decide whether oral statement number two was admissible. The State presented evidence that the body would have been

discovered under the doctrine of the inevitable discovery rule. See *Brewer v. Williams*, 430 U.S. 387, 406, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977); *Vanderbilt v. State*, 629 S.W.2d 709, 722 (Tex.Cr.App. 1981). The trial court found as a conclusion of law that the body would have been inevitably discovered by either law enforcement officers or private citizens. We conclude that the record supports the court's finding that the body would have been recovered regardless of the information furnished by oral statement number two. The body would have been found in any event from the precise description of the location of the body that was given in appellant's Galveston written statement.

■ In his first ground of error appellant also argues the Galveston confession was induced by an improper promise to see a psychiatrist for his problems. This contention was specifically denied by the State's witness. The first ground of error is overruled.

■ In his second ground of error, appellant argues that the trial court committed reversible error by admitting the Galveston written statement into evidence despite a violation of appellant's Fourth and Sixth Amendment rights to counsel. Appellant asked to make a phone call to his grandfather prior to signing the Galveston statement. Appellant signed the statement after being told it was his statement and not his grandfather's. He argues that this circumstance alone is sufficient to show that he did not wish to relinquish his Sixth Amendment right to counsel.

This argument disregards the rule which holds that a waiver of a defendant's constitutional rights is to be determined from the totality of the circumstances. *White v. State*, 591 S.W.2d 851, 860 (Tex.Cr.App. 1979); *Easley v. State*, 448 S.W.2d 490, 492 (Tex.Cr.App.1970). The trial court entered a finding of fact that prior to the Galveston statement appellant received from a magistrate the warnings required by Art. 15.17, V.A.C.C.P. Additionally, he received magistrate warnings in Beaumont and was visited by retained attorneys who advised him

to "keep his mouth shut." The trial court found that appellant was not mistreated, threatened or harmed in any manner, and that no promise or inducement was made in exchange for the confession which the court found to have been freely and voluntarily given.

Appellant urges us to adopt the reasoning in *United States v. Mohabir*, 624 F.2d 1140 (2nd Cir.1980). In that case the court held that the prosecution has a "heavy burden" of showing a waiver of Sixth Amendment rights by an indicted defendant and that burden cannot be discharged unless a "higher standard" is satisfied than that met by merely showing that the accused made his statements after appropriate Miranda warnings were given. Id. at 1148. In holding the post-indictment statements made by the defendant inadmissible, the court relied heavily on the facts that (1) no one explained to the defendant what it meant to be indicted and (2) the defendant was not taken before a magistrate until after he gave his statement. *United States v. Mohabir*, supra at 1149–50. The court stated that a valid waiver of the Sixth Amendment right to have counsel present during post-indictment interrogation must be preceded by a judicial officer's explanation of the content and significance of this right. Id. at 1153. See also *United States v. Clements*, 713 F.2d 1030, 1036 (4th Cir. 1983). Even if we adopted the reasoning in *United States v. Mohabir*, supra, appellant's reliance on the case is unwarranted. Appellant received magistrate warnings on two occasions prior to giving the Galveston written statement. In addition he had been indicted three times before and there is no suggestion in the record that he did not understand the significance of the indictment. The trial court's finding is supported by the evidence. The second ground of error is overruled.

■ In his third ground of error appellant contends that the trial court erred in entering a judgment of guilt on the jury's verdict because the evidence failed, as a matter of law, to establish beyond a reasonable doubt that the death of the de-

ceased was caused by choking or being buried alive, as alleged in the indictment. The Galveston County medical examiner testified that from his examination the deceased was apparently buried face down. There was sand in the deceased's mouth, lungs and trachea. He stated that a person would have to be alive and actively inhaling in order to get that much sand into the body. The physical evidence was consistent with a person being choked into unconsciousness, rolled over into a grave and breathing enough sand while unconscious to smother. The medical examiner stated that this was consistent with burying the deceased alive, but on cross-examination he conceded that the evidence was also consistent with the deceased being shoved down in muddy shallow water and gasping sand into her lungs.

Appellant called a pathologist board-certified in forensic medicine who stated that the autopsy findings would be consistent with a person being buried alive and breathing while buried, but they would be equally consistent with a person being held face down in sand and smothered or being drowned in shallow water. In his opinion no one could differentiate between the three means of death. The autopsy findings would also be consistent with the body having been buried subject to the action of the tide, where the water would wash sand into the throat and lungs over a period of time.

In rebuttal, the State called a board-certified forensic pathologist who testified that he had found a large quantity of sand in the gastric contents of the stomach of the deceased. This indicated that the deceased must have swallowed the sand. A person being drowned or smothered, who is conscious, would swallow as a reflex action. An unconscious person would not.

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Combs v. State,* 643 S.W.2d 709, 716 (Tex.Cr.App. 1982). All three medical experts agreed that the death could have occurred as the State alleged even though the results were as equally consistent with a person being held face down and smothered or being drowned in shallow, sandy water. Not mentioned in appellant's brief is his confession, in which he admitted choking the deceased and rolling her into a shallow grave in the sand. The expert testimony, combined with the confession of appellant and the location of the body, established that the evidence was sufficient to support the conviction. See *Jones v. State,* 582 S.W.2d 129, 134 (Tex.Cr.App.1979); *Gonzales v. State,* 505 S.W.2d 819, 820 (Tex.Cr.App. 1974). The third ground of error is overruled.

In his fourth ground of error appellant alleges that the trial court committed reversible error by failing to define the term "a probability" in submitting question number two of Art. 37.071(b), V.A.C.C.P., thereby depriving appellant of due process under the United States Constitution, because the term as used gave the jury no intelligible standard to guide them in their deliberation. This Court has previously held that such a definition is not required. *Barefoot v. State,* 596 S.W.2d 875, 887 (Tex.Cr.App.1980); cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *King v. State,* 553 S.W.2d 105 (Tex.Cr.App. 1977). No error is presented.

The judgment of the trial court is affirmed.

ONION, P.J., and MILLER, J., concur.

CLINTON and TEAGUE, JJ., dissent.