Affirmed and Memorandum Opinion filed December 28, 2004









Affirmed and Memorandum Opinion
filed December 28, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01148-CR

 

____________

 

AIMEI QIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

________________________________________________________

 

On Appeal from County Criminal Court at Law No. 15

Harris County, Texas

Trial Court Cause No.
1176589

________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Aimei Qin challenges
her conviction for prostitution on the stated grounds the evidence was legally
and factually insufficient to show she knowingly committed the offense.  We affirm.

I.  Factual and Procedural Background 








On June
3, 2003, Houston Police Officer Ronald B. Carter, who had worked in the vice
division for eighteen years, and two other police officers conducted an
undercover investigation of Kim=s Spa due
to ongoing problems with prostitution and previous arrests for prostitution at
that location.  Working undercover,
Officer Carter approached Kim=s Spa,
leaving his cell phone line open with Officer Williams listening on the other
end for his cue to enter the establishment. 
A receptionist at Kim=s Spa
arranged for several women to get in a line for Officer Carter and told him to
pick whichever one he wanted.  In
response to an inquiry by Officer Carter, the receptionist indicated that all
of the women could speak English and that all of them gave massages.  Officer Carter chose appellant.

Appellant and Officer Carter
engaged in conversation.  A door in the
reception area was then buzzed open, and appellant led the undercover officer
to a back room away from the front reception area.  Officer Carter left that room when he heard
Officer Williams at the front door and footsteps running down the hallway.  Officer Carter then opened the door for
Officer Williams.  Officer Carter
identified appellant as the person with whom he had been engaged in
conversation.  Appellant was arrested for
prostitution.

A jury convicted appellant of
prostitution.  The trial court sentenced
her to two days= in jail
and assessed a fine of $500. 

II.  Issues
Presented

In two issues, appellant asserts
the evidence is legally and factually insufficient to support her conviction
for prostitution.

III.  Standard
of Review








In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State=s
evidence or believe that appellant=s
evidence outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).

When evaluating a challenge to
the factual sufficiency of the evidence, we view all the evidence in a neutral
light and inquire whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  A reviewing court may find the evidence
factually insufficient in two ways.  Id.  First, when considered by itself, the
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt.  Id.  Second, after weighing the evidence supporting
the verdict and the evidence contrary to the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  at 484B85.  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id.
at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).








                           IV.  Legal
and Factual Sufficiency Analysis

A person
commits prostitution if she knowingly offers to engage, agrees to engage, or
engages in sexual conduct for a fee.  Tex Pen. Code Ann. ' 43.02
(Vernon 2003).  A person acts knowingly,
or with knowledge, with respect to the nature of her conduct or to
circumstances surrounding her conduct when she is aware of the nature of her
conduct or that the circumstances exist. 
A person acts knowingly, or with knowledge, with respect to a result of
her conduct when she is aware that her conduct is reasonably certain to cause
the result.  Tex. Pen. Code Ann. ' 6.03(b)
(Vernon 2003).  ASexual
conduct@ includes
sexual intercourse; and Asexual
intercourse@ means any penetration of the
female sex organ by the male sex organ.  Tex. Pen. Code Ann. '
43.01(4), (5) (Vernon 2003).

In her first issue, appellant
argues that the evidence is legally insufficient to support her prostitution
conviction because there is no evidence that she ever offered sex to Officer
Carter, that there were no negotiations for any fee for a sex act and no money
was exchanged. Additionally, she contends that Officer Carter was the one who
made an offer to her and that there was no testimony she agreed to engage in
any sex act with him.

In her second issue, appellant
argues that the evidence is factually insufficient because there is no evidence
that she acted knowingly.  In particular,
appellant argues that she never performed any overt act to indicate she
understood what Officer Carter was asking, no contact of any kind took place,
no one disrobed, no money was exchanged, and after she was arrested, she did
not attempt to escape and went through the booking process without speaking
English. 

At trial, Officer Carter
testified as follows:

(1)       He entered Kim=s Spa at about 10:15 p.m.;


(2)       Appellant was wearing a Athin, see-through-type
nightie . . . like women wear when they go to bed;@ 

(3)       Appellant was completely naked
underneath; 








(4)       After he chose appellant, she came up to
the window and told him prices for sexual intercourse and for oral sex; 

(5)       He spoke with appellant in English; 

(6)       Appellant did not seem to have any
problems understanding the conversation; 

(7)       Appellant agreed to engage in sexual
intercourse with Carter for a fee of $120; 

(8)       Carter agreed to pay appellant in the
back room;

(9)       After he told appellant the sex acts he
was interested in, the door was buzzed open, and appellant led him to a room
away from the front area;

(10)     The room had a little table, a small bed,
towels, and baby oil; and 

(11)     After appellant took him to that room, she told him to
disrobe.  

Officer Carter further testified
to the following:

(1)       Appellant did not have a valid massage
therapist license; 

(2)       Kim=s Spa did not have a valid
massage business license; 

(3)       On the occasion in question, he also came
into contact with two additional customers; 

(4)       All of the employees of Kim=s Spa were arrested that
night;

(5)       Appellant appeared to understand why she
was being arrested; 

(6)       Appellant gave him the answers to all of
the booking questions, such as her name, address, place of birth, height,
weight, social security number, driver=s license number, and date
of birth; 

(7)       Appellant did not have any problems doing
so; and 

(8)       An interpreter was not required.

On cross-examination, Officer
Carter testified as follows: 

(1)       Tape recordings of transactions involving
undercover police officers can be made, but that the recording equipment was
not working that night; 

(2)       He searched appellant, her handbag, and
the room and did not find any condoms; 

(3)       He had no physical contact with
appellant;








(4)       No money was exchanged; 

(5)       Appellant did not offer any sexual
services to him; rather, he specifically requested sexual services of her; and

(6)       He did not take any photographs of
appellant the night of her arrest to show how she was dressed. 

 

Officer Carter also admitted that a customer
would be told to disrobe for a massage and that appellant was not charged with
violating any statutes regulating what licenses a person must have in order to
perform a massage in Texas. 

Officer Williams testified to the
following: 

(1)       He had been assigned to the vice division
for ten years; 

(2)       He was conducting an investigation with
Officers Carter and Surginer on June 3, 2003 regarding ongoing organized crime
and prostitution; and 

(3)       There were previous problems at Kim=s Spa. 

 

Regarding the night of June 3,
2003, Officer Williams testified that he heard the following:

(1)       Officer Carter ask if all the women at
Kim=s Spa spoke English and if
they gave massages and that the answer was Ayes;@

(2)       A female engage Officer Carter in
conversation, stating that a massage would cost $45; 

(3)       Officer Carter ask for sexual intercourse
and the female reply that it would cost $120; and 

(4)       Officer Carter ask for oral sex and the female voice reply
that it would cost $100.

Officer Williams also testified
as follows: 

(1)       Officer Carter pointed out appellant to
him as the female with whom he had had the conversation; 

(2)       Appellant was then arrested; 

(3)       Appellant appeared to understand why she
was being arrested; 








(4)       Appellant did not sound like she was
having any problems communicating with Officer Carter; 

(5)       He never got the impression appellant
could not speak or understand English; and 

(6)       Appellant did not hesitate or seem
confused by Officer Carter=s questions.

 

In response to the question
whether he understood that appellant and Officer Carter had agreed to engage in
sexual activity, Officer Williams stated that he took their conversation to
mean that each time appellant gave a price, that there was an agreement because
she was saying, Ayes, this
would cost this much . . .@  Regarding the two other customers at Kim=s Spa,
Officer Williams testified that one, who was sixteen years old, had $120 in
cash. 

On cross-examination, Officer
Williams stated that there were three females present at Kim=s Spa,
that he could not see into the spa, and that he could not see who quoted
Officer Carter the prices.  He also
testified as follows regarding the booking process: 

(1)       An accused does not need to speak English
to get through it; 

(2)       If a police officer is unable to
communicate with an accused, the officer will try to take steps to ensure the
information is adequately recorded but that a person will be booked whether
they are able to speak English or not;  

(3)       He believed Officer Carter filled out the
booking information on appellant at the crime scene and had no problem doing
so;

(4)       Officer Williams was sure Officer Carter
obtained appellant=s passport that provided
her name, date of birth, and all of the information that he would have needed
to identify her along with a photographic identification.








Under the applicable standard of
review, we conclude that the evidence is legally sufficient to support
appellant=s conviction for
prostitution.  A rational trier of fact
could have found beyond a reasonable doubt that appellant knowingly agreed to
engage in sexual conduct for a fee. 
Contrary to appellant=s
arguments on appeal, the applicable statute does not require the State to prove
that appellant initiated the discussions regarding whether she would knowingly
agree to engage in sexual conduct for a fee. 
See Tex Pen. Code Ann. '
43.02.  Likewise, the statute does not
require evidence of negotiations over the fee to be charged or evidence of an
exchange of money.  See id.  Accordingly, we overrule appellant=s first
issue.

After examining all the evidence
under the applicable standard of review, we further conclude the evidence is
factually sufficient to support appellant=s
conviction.  The State was not required
to prove any contact between Officer Carter and appellant, any disrobing, any
exchange of money, or any attempt to escape. 
See id.  In her main
argument under her second issue, appellant asserts the evidence is factually
insufficient to support the jury=s finding
that she acted knowingly because there is factually insufficient evidence to
show that she understood the English language. 
We disagree and conclude that the testimony of Officers Carter and
Williams provides factually sufficient evidence that appellant acted knowingly
and that she was able to understand and converse in the English language.  Accordingly, we overrule appellant=s second
issue.

Having overruled appellant=s two
issues, we affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed December 28, 2004.

Panel
consists of Justices Anderson, Hudson, and Frost.

Do Not
Publish C Tex. R. App. P. 47.2(b).