

## NUMBER 13-13-00156-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**COURTNEY LEV,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 347th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

By four issues, appellant, Courtney Lev challenges her conviction for two counts of failure to stop and render aid. *See* TEX. TRANS. CODE ANN. §§ 550.021, 550.23 (West, Westlaw through 2013 3d C.S.). Lev argues that (1) the evidence was legally insufficient to support her conviction; (2) the trial court erred by refusing to suppress evidence

obtained by police during a search of Lev's cell phone and car; (3) the trial court erred by allowing the State's medical expert to give a legal conclusion that one of the victims sustained serious bodily injury; and (4) the trial judge erred by shifting the burden of proof to Lev.[1]  We affirm.

## I.    BACKGROUND

The State's indictment alleged that after being involved in an accident causing serious bodily injury, Lev did "intentionally or knowingly leave the scene of the said accident without giving her name and address, registration number of the vehicle [Lev] was driving or the name of [Lev's] motor vehicle liability insurer to any person injured or the operator or occupant or the person attending the vehicle involved in the collision without rendering reasonable assistance to [the victims] when it was then apparent that [the victims were] in need of medical treatment."

At trial, Fermin Garcia testified that on his way home from work at some time near 6:00 a.m. on October 9, 2011, he witnessed a Hummer 3 vehicle stop on the side of the road.  A person got out of the vehicle and ran into the intersection.  Garcia stopped and saw a man and a woman lying on the ground next to bicycles.  There were a few other people there, one who was attending to the lady.  Garcia testified that he therefore started asking the injured man questions.   Garcia explained that a lady came up from behind him and stated that she had been driving the Hummer.  Garcia testified that he smelled alcohol on her breath.  Garcia continued questioning the injured man and asking him questions "to keep him conscious."  Subsequently, another person at the scene asked, "where's the person that was driving?"  Garcia looked up and the driver of the Hummer

---

[1] We have renumbered and reorganized Lev's appellate issues.

2

was gone. Garcia explained that the driver of the Hummer never gave him her name or insurance information. Garcia explained that he was at the scene between five and ten minutes before an emergency vehicle arrived.

The State then called Jonathan Kukal. Kukal testified that he was jogging on the road on the morning of the accident. He witnessed a Hummer strike the curb, then re-adjust and hit two bicyclists. Kukal ran across the street and dialed 911 on his cell phone. He walked over to the bicyclists who were on the ground and not moving. He then noticed a person come out of the Hummer and say "Oh, I'm so sorry, I'm so sorry, I hit him, I hit them." Kukal testified that the woman "kept going back to the car," which made him think she was going to leave so he gave her license plate number to the 911 operator. Kukal then explained that "two minutes later you could hear the sirens from a distance and I look over and see the brake lights on the Hummer and then she took off." Kukal testified that the woman did not give him her name or insurance information. Kukal further testified that there were four or five people attending to the victims of the accident and that he was standing right in front of the victims and the people assisting them.

Officer Enrique Roman testified that he responded to the scene of accident when he received a call from dispatch. Officer Roman was notified that the suspect vehicle in question was a white Hummer. He proceeded to the Hummer's registration address. When he arrived at the address, another officer, Lieutenant Henry Sepulveda, had pulled over the suspect vehicle as it was leaving the address. Lieutenant Sepulveda was questioning the male driver of the vehicle in his patrol car. The driver was Erik Pina, who identified himself as Lev's boyfriend. Officer Roman proceeded inside the house but could not find Lev in the house or in the backyard. Officer Roman located Lev's cellphone

3

in a room in the house. He obtained possible passwords from Pina, one of which unlocked the phone. He discovered that Lev called Pina twice on the morning of the accident. Pina sent Lev a text which stated, "Call Robert." Officer Roman then arrested Pina on charges of "hindering apprehension."

Subsequently, Officer Roman proceeded to the hospital to transport Lev from the hospital to the house. Officer Roman explained that Lev had been arrested at the house and transported to the hospital because she had been involved in an accident. Lev's attorney cross-examined Officer Roman extensively regarding the timing of the phone call made from Pina to Lev. Roman explained that he found Lev's phone by calling the number, which Pina gave to him. Roman testified that he could not access the phone because it was password protected. He testified that he did not have a warrant to search the phone. Lev's attorney then moved to suppress the evidence obtained from the phone, which the trial court denied. However, Lev's attorney continued questioning Officer Roman regarding how he accessed the phone. Officer Roman explained that he received the password from her boyfriend. Lev's attorney renewed his motion which the court denied again. Lev's attorney asked Officer Roman if Lev smelled like alcohol. Roman responded that she did not.

The State next called Amy Silvas Donahue, who worked at a bar with Lev, and was a roommate of Lev and Pina in October 2011 at the time of the accident. Donahue testified that Lev discussed the accident with her. She recounted that Lev told her that she had "hit someone and that she stopped and talked to them and that she couldn't be there. She said just freaked out and she got into her truck and went home." Donahue

4

testified that Lev did not indicate whether or not she had left her name or insurance information with anyone at the scene of the accident.

The State then called Pina who testified that he received phone calls from Lev early in the morning of October 9. Pina testified that Lev told him to open the door because she was coming home. When she arrived home, she told Pina that "there might have been an accident." Pina then told her he was going to get coffee. As he was driving away in a different car, he was stopped by a police officer. Pina told the officer that he had not been driving the white Hummer but that his girlfriend, Lev, had used it to drive to work and back. Pina testified that he gave the officer oral permission to enter the house to look for Lev. Pina testified that one of the officer's found Lev's phone. Pina stated he gave the officer multiple passwords that he thought might unlock the phone. Pina indicated that he texted Lev, "Call Robert." He explained that he was referring to Robert Hatcher, Lev's defense attorney.

Officer Henry Sepulveda testified that he responded to the address listed for the white Hummer. He explained that he stopped Pina as he was driving away from the residence. He testified that Pina informed him that it was his wife's Hummer but he would not state who was driving at the time. Officer Sepulveda then approached the house searching for Lev. He testified that he had discovered Lev's driver's license in a purse inside the Hummer when they were inventorying it. Sepulveda explained that they knew Pina had spoken with Lev because Pina gave them permission to look at his phone. Sepulveda testified that he left the house after arresting Pina but received a call from dispatch informing him that Lev had returned to the house. He arrested her for failure to stop and render aid.

On cross-examination, Lev questioned Officer Sepulveda extensively on the inventory search that lead to the discovery of Lev's driver's license in the Hummer. Following this questioning, Lev's attorney generally stated, "I'd like to make my motion to suppress."[2] The trial court replied, "I'm going to deny that."

The State also elicited testimony from Dr. Frank Luckay and the victims, Steven and Kimber Pruitt, in order to support its contention that the accident resulted in serious bodily injury. At the close of evidence, the jury returned a verdict of guilty on both counts. Lev was sentenced to ten years' imprisonment for the first count and five years' imprisonment for the second count, set to run concurrently. Lev's sentences were probated for a term of ten years. This appeal followed.

## II.    LEGAL SUFFICIENCY

### A. Standard of Review and Applicable Law

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of

---

[2] The trial court sustained the State's objection that defense counsel should argue a motion to suppress outside the presence of the jury, and it instructed defense counsel to do so.

6

all the evidence when viewed in the light most favorable to the verdict." *Id.* (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id.* "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* "Direct and circumstantial evidence are treated equally." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

Under Section 550.021 of the Texas Transportation Code,

The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:

> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
>
> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and
>
> (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

7

TEX. TRANSP. CODE ANN. § 550.021.

      Under Section 550.023 of the Texas Transportation Code,

      The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:

      (1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;

      (2) if requested and available, show the operator's driver's license to a person described by Subdivision (1); and

      (3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

*Id.* § 550.023.

## B. Discussion

Lev argues that the State failed to prove that she did not exchange the information legally required of her to a person at the scene of the accident. She contends that the State's evidence was insufficient because the record reveals that there were multiple people at the scene of the accident that the State failed to investigate or call as witnesses, including the person attending to the female victim, Kimber Pruitt. Lev asserts that the State could not provide sufficient evidence that she did not leave the required information with one of the other people at the scene of the accident.

At trial the State provided testimony from two witnesses that police interviewed at the scene of the accident. Fermin Garcia testified that he attended to the male victim, that Lev approached him and said she was the driver of the Hummer, and that Lev

8

subsequently left the scene without providing him her contact information. Jonathan Kukal testified that he witnessed the Hummer strike the victims, that Lev approached him and admitted to hitting the victims, and that she subsequently returned to her car and drove away. Kukal explained that he was standing right in front of the victims from the time the woman approached the victims to the time she drove away and that he never heard her leave her name or insurance information with anyone at the scene. Finally, Amy Silvas Donahue testified that Lev told her that after the accident, she "freaked out" and left the scene. Moreover, evidence was presented that a witness gave the dispatcher Lev's license plate number and that the officers went to the registration address of the vehicle.[3] We hold that this was sufficient evidence for the jury to conclude that Lev failed to "give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision." *See* TEX. TRANSP. CODE ANN. § 550.021; *Clayton*, 235 S.W.3d at 778.

We overrule Lev's first issue.

### III. SUPPRESSION OF EVIDENCE

**a. The Search of the Hummer**

By her second issue, Lev contends that the trial court erred by admitting testimony indicating that Lev's driver's license was found in the Hummer. Specifically, appellant argues that Lieutenant Sepulveda stated that when he removed Lev's driver's license from the vehicle, neither he nor Officer Roman had "permission or a warrant to enter the

---

[3] The evidence established that the officers were not provided with Lev's information when the accident occurred. Thus, the jury could have reasonably believed that Lev did not leave that information with other witnesses at the scene.

9

vehicle." Assuming, without deciding, that the admission of the testimony regarding the driver's license was error, we hold that such error was harmless beyond a reasonable doubt because it was cumulative of other evidence.

The admission of evidence in violation of a defendant's Fifth Amendment right to counsel is subject to a harm analysis. *Hernandez v. State,* 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). However, because it is constitutional error, we can find the error harmless only if we conclude, beyond a reasonable doubt, that it did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Hernandez,* 60 S.W.3d at 108. In determining whether constitutional error in the admission of evidence is harmless, we consider several factors, including the following: the importance of the evidence to the State's case; whether the evidence was cumulative of other evidence; the presence or absence of other evidence corroborating or contradicting the evidence on material points; the overall strength of the State's case; and any other factor, as revealed by the record, that may shed light on the probable impact of the error on the mind of the average juror. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

Lev contends that "without the search of the Hummer, no driver's License would have been found linking [Lev] to the accident." However, during trial Pina, Lev's boyfriend, testified that when he was originally detained by police, he informed an officer that Lev had driven his car to work and home. Moreover, Donahue, Lev's roommate, testified that Lev admitted to her that she had been involved in the accident. Accordingly, any error made by the trial court in overruling the objection to driver's license was harmless beyond a reasonable doubt because it was cumulative of other undisputed witness testimony linking Lev to the accident. *See* TEX. R. APP. P. 44.2(a); *Clay*, 240 S.W.3d at 904.

10

### b. Cell Phone Evidence

Further, Lev argues that the trial court erred by failing to suppress testimony regarding texts from Lev's phone discovered by police, specifically a text from Pina to Lev that stated "Call Robert." However, assuming the admission of this evidence was properly preserved error, we hold that any error was cured.

To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. TEX. R. APP. P. 33.1. In addition, a party must object each time the inadmissible evidence is offered. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.* However, a subsequent objection is not required when a party obtains a running objection or obtains an adverse ruling on an objection outside the presence of the jury. *See* TEX. R EVID. 103(a)(1) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections."); *Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App.1996).

Here, Lev did not file and obtain a ruling on a pre-trial motion to suppress the cell phone evidence.[4] The State elicited testimony from Officer Roman in which he stated that he obtained Lev's cell phone during the search of the house and discovered a text

---

[4] At oral arguments on appeal, Lev's attorney argued that Lev originally filed a pre-trial motion to suppress this evidence, but that the prosecutor brought the wrong police officer and that it was carried forward to trial and the judge stated that she would let him know when he could object. However, the record reveals that Lev filed a motion to suppress only statements made by Lev after she was arrested. She did not file any pretrial motion seeking to suppress cell phone evidence or argue that the search of her cell phone violated her fourth amendment rights. Moreover, at a pretrial hearing, the record reveals that Lev's attorney voluntarily withdrew the motion and requested to address the matter at trial.

message sent to her by Pina which stated "Call Robert."[5] No objection was made to this testimony. After cross-examining Officer Roman regarding the procedures employed to obtain the cell phone evidence, Lev's attorney generally stated, in the presence of the jury that he "move[d] to suppress."[6] The trial court denied the motion.

Later at trial, Pina testified that he texted Lev, "Call Robert." And Pina explained that Robert referred to Lev's defense attorney. Lev did not object to this testimony. Because Lev's attorney did not request a running objection or obtain an adverse ruling on the evidence outside the presence of the jury, the subsequent admission of testimony regarding the cell phone evidence cured the harm resulting from any previous error committed by the trial court.[7] *See Valle*, 109 S.W.3d at 509.

---

[5] Officer Roman did not identify Robert to the jury.

[6] During the State's direct examination of Officer Roman, well after he had testified about the events that occurred at the house, the prosecutor requested a bench conference so that she could obtain a ruling on the admissibility of Lev's statements made at the hospital, which were subject to a motion in limine. In response, Lev's attorney explained, "There's also a motion to suppress. I have a suppression that I need to—that was just brought up." Lev's attorney further explained that Officer Roman had "testified that he got his phone. What he didn't testify to—what's left out of it is I think the fact that he picked up the phone prior to the time he asked permission to do so . . . . He didn't ask permission to seize anything, that he silenced it and at this point it's been improper." The prosecutor responded, "This has nothing to do about the question, I was about to ask him if the defendant made a statement at the hospital, this has nothing to do with the phone." The trial court allowed the questioning regarding Lev's statements at the hospital to continue. Lev's attorney during his explanation of the motion to suppress only indicated that "at this point" the evidence is "improper" and did not specifically object to the admissibility of the evidence. Moreover, the court decided to allow the State's questioning regarding Lev's statements at the hospital and did not make a ruling on any motion to suppress or objection to the cell phone evidence during the bench conference. *See* Tex. R. Evid. 103(a)(1).

[7] Moreover, Pina's testimony that he had texted Lev was independent from Officer's Roman's testimony that he discovered the texts on Lev's phone. As noted above, Lev did not object to this testimony or argue that Pina's statements regarding the text he sent to Lev were rendered inadmissible by the allegedly illegal search or were "fruit of the poisonous tree." *See Wicker v. State*, 667 S.W.2d 137, 141 (Tex. Crim. App. 1984). Notably, the source of the State's knowledge of the text is uncertain as the State may have obtained the information about the text directly from Pina or from Pina's phone, which Officer Sepulveda testified he was given consent to search. *See id.* ("The fruit of the poisonous tree doctrine is not applicable, however, when knowledge or possession of the evidence in question is obtained from a source independent of the [S]tate's wrongful act."). Accordingly, even if any trial court error was not cured, Roman's previous testimony about the "Call Robert" text was cumulative of the information provided by Pina's unchallenged testimony regarding the text and therefore harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

We overrule Lev's second issue.

## IV. EXPERT TESTIMONY

Lev argues that the trial court erred by allowing Dr. Luckay to give a legal opinion as to whether the injuries in this case constituted serious bodily injury. However, at trial Lev did not object to Dr. Lukay's testimony on this basis. When the State called Dr. Luckay to testify, Lev's trial attorney requested that Dr. Luckay be taken on voir dire outside of the presence of the jury to qualify him as an expert. During the voir dire examination, Lev's attorney questioned Dr. Luckay regarding his training and experience. Following the examination, the trial court qualified Dr. Luckay as an expert witness. Lev's attorney stated, "Did you note our objection?" The trial court responded, "For the record it is noted." The trial court then brought the jury back to the courtroom, and the State began its direct examination in front of the jury. The State questioned Dr. Luckay regarding his training and his experience treating victim Kimber Pruitt. After this questioning, the trial court qualified Dr. Luckay as an expert in front of the jury and stated that it noted Lev's attorney's objection.[8] The State subsequently read the definition of serious bodily injury and asked Dr. Luckay if, based on the legal definition, Kimber Pruitt suffered serious bodily injury. Dr. Luckay responded "yes, she did." Lev's attorney did not object to this question or response, nor did he ever object to the Dr. Luckay's testimony on the basis that it offered a legal conclusion. Accordingly Lev's argument in this regard was not preserved for our review. *See* TEX. R. APP. P. 33.1 (requiring a party, in order to preserve an error for appeal, to object, state the grounds with sufficient

---

[8] At oral arguments on appeal, Lev's attorney argued that the trial court stated that his objection was noted and did not allow him to make an objection on the basis that Dr. Luckay was offering a legal conclusion. However, the record reveals Lev's attorney never attempted to make an objection on this basis and that the trial court took no action to prevent or attempt to prevent any objection.

specificity, and obtain an adverse ruling); *see also Gallo v. State*, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007) (providing that appellate arguments must comport with objections at trial); *see Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited).

We overrule Lev's third issue.

## V.    BURDEN OF PROOF

By her fourth issue, Lev "complains of an extreme prejudice shown by the trial judge in the way she insisted on conducting the trial which had the effect of transferring the burden to [Lev] and causing harm." Lev argues that the trial court displayed prejudice by: (1) adding excessive bond conditions and refusing to allow a waiver of arraignment; (2) questioning witnesses during voir dire without prompting from attorneys; (3) complementing the prosecuting attorney during voir dire; (4) accepting several challenges without the assistance of the parties' attorneys; (5) indicating during voir dire that she would discuss a matter with someone later; (6) excusing multiple jurors without a party raising a challenge for cause;[9] (7) sustaining and overruling objections during Lev's attorney's opening arguments; (8) failing  to invoke the rule until after voir dire was complete despite defense counsel's written notice to invoke the rule prior to voir dire,; (9) assisting the prosecutor in making multiple objections; (10) allowing victim Stephen Pruitt to testify regarding serious bodily injury over Lev's objection.[10]

---

[9] Lev did not object to any of the complained of actions at voir dire.  Moreover, on appeal Lev does not cite any law regarding proper procedures during voir dire.  Instead, she contends that the actions taken by the trial court displayed prejudice.

[10] On appeal, Lev does not individually argue that any of these actions constituted reversible error, nor does she cite any authority indicating that the trial court erred.  Instead, Lev contends that these actions shifted the burden of proof at trial.

14

In support of her argument, Lev cites *Alford v. State*. 806 S.W.2d 581, 584 (Tex. App.—Dallas 1991), *aff'd*, 866 S.W.2d 619 (Tex. Crim. App. 1993). In *Alford*, the Dallas Court of appeals rejected the appellant's argument that his due process rights were violated by a jury instruction placing the burden of proof on him to prove his affirmative defense of duress. *Id.* However, Lev cites no law indicating that a trial court can shift the burden of proof at trial by making rulings in the State's favor or by displaying prejudice in any of the ways alleged by Lev. *See* TEX. R. APP. P. 38.1. Moreover, we find nothing in the record to support Lev's contention that the trial court's actions caused the burden of proof to shift to Lev.

Accordingly, Lev's fourth issue is overruled.

## VI.    CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
Rogelio Valdez
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of February, 2015.

15