**Affirmed and Memorandum Opinion filed July 21, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00166-CR

### ANTWAIN MAURICE BURKS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 12-DCR-061196**

# MEMORANDUM OPINION

In a single issue, appellant Antwain Maurice Burks challenges the sufficiency of the evidence supporting his conviction for tampering with evidence. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant and the complainant, Dontay Leonard, were together on the night the complainant was murdered. That evening, appellant drove the complainant to a

night club. The complainant was in appellant's company at 1:03 a.m., when the complainant spoke with his girlfriend on the telephone. Within twenty minutes of that phone call, the complainant's dead body lay face down in the street. The cause of death was two gunshot wounds.

Appellant relayed different stories to different people about what happened that night. He generally maintained that the complainant got into a fight with a club patron and that at least one individual approached them while they were in their car on the way home and killed the complainant. Appellant also admitted to one person that he pushed the complainant out of his vehicle and into the street.

Appellant was arrested and charged with tampering with evidence, a second degree felony because the evidence was a human corpse. Appellant pleaded "not guilty." At trial, the jury found appellant guilty and assessed punishment at sixteen years' confinement.

## II. TAMPERING WITH EVIDENCE

Appellant asserts the evidence is legally insufficient to prove beyond a reasonable doubt that the complainant was dead when he left appellant's vehicle. In other words, appellant argues the evidence is legally insufficient to prove that he altered, concealed, or destroyed the complainant's corpse as opposed to the complainant's mortally-wounded body.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe the appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned

unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W. 2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume that the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The indictment alleged that appellant tampered with the corpse of the complainant with the intent to impair its availability as evidence in a subsequent investigation or official proceeding. A person commits the offense if, knowing that an investigation or official proceeding is pending or in progress, the person alters, destroys, or conceals a human corpse with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *See* Tex. Penal Code Ann. § 37.09 (West 2014); *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).

The record contains evidence of the following sequential events leading up to and following the complainant's death:

- On the night the complainant was killed, appellant gave the complainant a ride home from jail after the complainant was bonded out of jail.
- The complainant was in jail for a charge related to his conduct towards the complainant's girlfriend.
- After the complainant was bonded out of jail, the complainant and appellant left, stating that they intended to go to a club.

3

- A witness encountered the complainant's body, face down on the street. The witness estimated the time was between 1:20 a.m. and 1:30 a.m. The witness then called police.

- Police received a call at 1:46 a.m. and arrived on the scene at 1:50 a.m. The paramedics in the ambulance arrived on the scene and determined the complainant was dead. The police could not find any eyewitnesses or anyone who heard gunshots in the area.

- After the complainant's brother learned the complainant had been killed, the complainant's brother called appellant. At first appellant would not speak with him. Appellant finally told the complainant's brother that appellant and the complainant had gone to the night club and the complainant had gotten into an altercation with someone. Then, appellant and the complainant left the club and were joy riding and smoking when someone approached the car and put a gun to the complainant's head. Appellant took off running. Appellant stated that the gun shot two times and then it jammed. The complainant's brother asked appellant how he knew the gun jammed but apparently did not receive an answer.

- Appellant's account seemed improbable to the complainant's brother because appellant was injured and using a cane to walk at the time. Appellant did not call anyone after the shooting.

- Appellant's girlfriend spoke to appellant at 1:03 a.m., but could not get in touch with him after that time.

- Appellant's sister testified that appellant told her several conflicting accounts about what happened that night. In one of the accounts appellant indicated he pushed the complainant out of his vehicle.

- The mother of one of the complainant's children testified that she spoke with appellant and asked him whether the complainant died instantly. Appellant indicated that the complainant did not make any sounds.

- The aunt of one of the complainant's children testified that she spoke with appellant and appellant advised that he did not kill the complainant, but he did push him out of the car.

The record also contains testimony about the physical evidence in appellant's car and at the scene where the complainant's body was discovered:

4

- The medical examiner testified that the complainant suffered two gunshot wounds. The first shot went through the complainant's chest and into his abdomen, where it caused damage to the liver. The medical examiner testified that the first gunshot was not immediately life-threatening because of its location, but without medical treatment could be fatal. The second gunshot entered the left side of appellant's chest and caused damage to the left lung and to the heart and also the liver. The medical examiner did not discuss whether or not the second gunshot was immediately life-threatening.

- Officer Chi Thanh Nguyen testified that he found a bullet that looked like it may have misfired. Officer Nguyen explained it was a whole bullet that was indented as if someone had attempted to fire it, but it had not fired properly.

- Detective Richard Martinez testified that when he discovered the complainant, the complainant's blood was mostly concentrated around his waist area. The way the blood was pooled suggested he was probably seated somewhere and was there long enough for the blood to soak in around his waist and buttocks area.

- Detective Martinez testified that the complainant had a tear in his boxer shorts and an abrasion under his right eye. Detective Martinez said the tear could have come from being pushed out of the car and the abrasion under the right eye was related either to being pushed out of the car or resulted from an altercation.

- Police officers searched appellant's car. They found blood stains in the front seat of the passenger side of the car. Bao Nguyen from the crime lab testified that, to a reasonable degree of scientific certainty, excluding an identical twin, the blood contained in appellant's passenger seat belonged to the complainant.

- Detective Martinez testified that appellant's car was cleaned after the night of the complainant's murder.

- The medical examiner testified that the abrasion on the complainant's face was consistent with the skin being scraped over a rough surface. The medical examiner noted similar abrasions to the complainant's right knee. The medical examiner testified that being pushed out of a vehicle could cause these injuries.

- Photographs from the scene showed a trail of blood. The blood was not pooled in the way it would flow if the blood were flowing onto the

concrete from the complainant's body. Instead, the blood trailed in straight lines, which suggested that it resulted from the body being dragged.

To find appellant guilty of tampering with evidence, the jury needed to find that appellant, knowing an investigation or official proceeding is pending or in progress, altered, destroyed, or concealed, the complainant's body with intent to impair its verity, legibility, or availability as evidence.[1] Appellant's central argument is that without evidence of the "golden hour" at which the complainant died, there is no evidence that the complaint died either in appellant's car or before exiting appellant's car, however that occurred. We disagree. There is both lay testimony and expert testimony about the physical evidence from which a rational jury could have determined that the complaint was dead at the time he exited appellant's vehicle.

As to the physical evidence, the jury heard from the medical examiner that the complainant died from two gunshot wounds, but no witnesses near the complainant's body heard or saw anything, even though at least one witness was at home and awake at the time of the murder, near the area where the complainant's body was found. These facts support an inference that the gunshots occurred elsewhere. The jury also heard evidence from a police officer and the medical examiner that the way the complainant's blood pooled led them to believe the

---

[1] Appellant does not assert the evidence is insufficient to show he knew an investigation or official proceeding was pending or in progress. Even if appellant had asserted these claims, we would conclude the evidence is sufficient to support the jury's verdict. *See Williams*, 270 S.W.3d at 144–45. To the extent appellant argues the evidence is insufficient to prove he altered, concealed, or destroyed a corpse, the record contains sufficient evidence to support the jury's verdict. For example, the jury heard evidence that appellant moved the complainant's body, an act that altered the body's location. *See Carnley v. State*, 366 S.W.3d 830, 836 (Tex. App.—Fort Worth 2012, pet. ref'd); *Ramos v. State*, 351 S.W.3d 913, 914–15 (Tex. App.—Amarillo 2011, pet. ref'd) (holding evidence sufficient to support conviction for tampering with evidence where the record contained evidence the defendant dragged a body). The jury also heard evidence that appellant's actions altered the physical state of the complainant's body. *See Carnley*, 366 S.W.3d at 836; *Ramos*, 351 S.W.3d at 914–15.

6

complainant was seated when he died. The complainant's blood was found in appellant's car, which confirms testimony that the complainant was in appellant's car when the complainant died. The photos before the jury show the complainant's body and two even trails of blood. In the photos, other than the trails of blood and the substantial amount of blood soaked into the complainant's clothing, there is no blood surrounding the complainant's body. The medical examiner testified that the even trails of blood resulted from blood dripping off a body that was being dragged; they did not result from blood flowing out of a body. The medical examiner explained that blood flowing from a body clots and pools in a way not present in the photos. The jury reasonably could have concluded from this testimony that appellant's blood had stopped flowing from his body by the time his body was moved.

Appellant notes that no witness stated the exact time of the complainant's death and the medical examiner testified that one of the gunshot wounds was not immediately life-threatening based on its location. The lay testimony also supports a rational determination that the complaint was dead when his body left appellant's vehicle. Although no witness stated the exact time of the complainant's death, the jury had evidence that appellant admitted the complainant was dead before appellant pushed his body out of the car. Specifically, the mother of the complainant's child testified that she spoke with appellant after the complainant's death. The mother wanted to know whether the complainant suffered or died instantly and appellant told her the complainant made no sounds, which suggests he died instantly.

In sum, expert testimony that the physical evidence points to blood ceasing to flow from the complainant's body before it left the vehicle and gunshot wounds consistent with a rapid death coupled with lay testimony about appellant's

7

eyewitness account of the complainant's death support the jury's conclusion that appellant tampered with a human corpse. *See Ramos*, 351 S.W.3d at 914–15.

The jury's verdict is supported by sufficient evidence. *See id.* Accordingly, we overrule appellant's sole issue and affirm the trial court's judgment.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).