**Affirmed and Memorandum Opinion filed July 7, 2022.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-20-00716-CR**

**ANTHONY  BAXTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 86747-CR**

## MEMORANDUM  OPINION

In two issues, appellant challenges his murder conviction that resulted in a 70-year prison sentence. He asks that we render an acquittal for insufficient evidence, or alternatively, that we remand for a new trial based on the trial court's refusal to admit certain evidence in support of his claim of self-defense.  Finding the evidence sufficient to support appellant's murder conviction over and above appellant's self-defense evidence, and finding appellant's evidentiary complaints deficient, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2019, appellant was indicted for murder based on allegations that he intentionally or knowingly shot his brother, Robin Baxter, with a firearm on February 11, 2019. He pleaded not guilty and when his case was tried to a Brazoria County jury in September 2020 appellant argued that the act of shooting Robin was justified self-defense.

The principal evidentiary support for his self-defense argument came from two recorded statements that appellant gave to police investigators which, after contested redactions were made, were admitted as exhibits and played in connection with the investigating officer's testimony.

Appellant told investigators that when he was at his friend's, Velma Farr's, house his brother Robin came driving down the street "like a bat out of hell" and began yelling at appellant about a leather coat. Appellant stated that he did not understand why he had done this because it was his coat and his brother had owed him money for it. Appellant said that Robin parked in a way that pinned appellant's vehicle and thus rendered him incapable of driving away. Appellant told the police that Robin threatened to "kick [his] ass". Appellant reported that Robin made threats before, that he knew that Robin owned a 9-millimeter handgun and a shotgun, and that he feared his brother.

Appellant and other witnesses reported that Robin had violent tendencies. Appellant's nephew, Joshua Varney, was asked if he knew the "character trait of Robin Baxter as being either violent or peaceable," and answered, "Violent." Though Velma Farr gave varied descriptions of Robin, at one point she agreed with the description of Robin as a "fighter," stated that he could "be loud with people," and testified that she had "never seen him back down, you know, like he did that day." Farr also indirectly informed the jury that Robin had been to prison.

2

Fearful what his brother might do to him, appellant told the police investigator Officer Newsome that he retrieved his gun from his truck. Appellant stated that he saw Robin reach toward the driver-side door and heard a "click-click" noise. Appellant then pointed and fired his gun, shooting Robin once in the face. Appellant suggested to investigators that he believed that Robin was reaching for a gun. Appellant admits he never saw Robin holding a weapon, although, at one point, appellant stated that he saw Robin holding "something". Appellant also stated that he saw Robin start to get out but never actually leave the driver's seat.

Appellant explained that he rushed Robin to the hospital. He explained that he did not stop for law enforcement seeking to pull him over because he was attempting to save Robin's life.

The jury did not hear appellant tell the police that he believed Robin was on drugs. However, Robin's autopsy report was admitted into evidence and revealed that he had "presumptive positive" for opiates, amphetamines, and Fentanyl. The medical examiner testified that the amount of methamphetamine in Robin's blood, 1200 nanograms per milliliter, was a "toxic level". He testified that though it "depends on the person," someone with Robin's level of methamphetamines in their blood "may show confusion, hallucination, [or] aggressive, violent behavior".

Upon this evidence, appellant's counsel argued in closing that appellant was justified in shooting his brother, that appellant reasonably believed Robin would murder him or was attempting to use deadly force against him. Having heard the argument and been provided instructions on the issue of self-defense, the jury found appellant guilty as indicted and assessed his sentence. The Court accepted the jury's verdict and sentence-recommendation, and entered a judgment sentencing appellant to 70 years confinement in the Texas Department of Criminal

Justice—Correctional Institutions Division. Appellant now appeals the court's judgment in two issues, both of which relate to his self-defense defense.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue appellant generally challenges the legal sufficiency of the evidence to support his conviction. Appellant complains that the State's witnesses to the shooting were weak, and that the self-defense evidence was substantial enough to effectively impede his conviction.

### *Standard of Review*

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

We measure sufficiency to support a conviction by comparing the evidence presented at trial to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge reflects the governing law, the indictment, the State's burden of proof and theories of liability, and an adequate description of the offense for the particular case. *Id.*

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 2011). Alternatively, he also commits the offense when he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id*. at § 19.02(b)(2).

A person acts with intent with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. at § 6.03(a) (West 2011). He acts knowingly with respect to the nature of his conduct (or to circumstances surrounding his conduct) when he is aware of the nature of his conduct (or that the circumstances exist). *Id*. at § 6.03(b). He acts knowingly with respect to his conduct when he is aware the conduct is reasonably certain to cause the result. *Id*.

Intent, being a question of fact, is in the sole purview of the jury. *Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A jury may rely on collective common sense and common knowledge when determining intent. *Ramirez v. State,* 229 S.W.3d 725, 729 (Tex. App.–San Antonio 2007, no pet.). Intent also may be inferred from the circumstantial evidence surrounding the incident, which includes acts, words, and conduct of the accused. *See* Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005); *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "Attempts to conceal incriminating evidence, inconsistent statements, and

5

implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

A person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect him from another's use or attempted use of unlawful force. Tex. Penal Code § 9.31(a) (Vernon 2019). "An actor is justified in using deadly force if, among other things, the actor reasonably believes deadly force is immediately necessary to protect the actor against another's use or attempted use of unlawful deadly force." *Green v. State*, 589 S.W.3d 250, 255 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *see* Tex. Penal Code § 9.32(a)(1)–(2)(A).

After a defendant satisfies his burden by producing some evidence that supports self-defense, the State then bears the burden of persuasion to disprove self-defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Moralez v. State*, 450 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Id.* citing *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). In resolving the sufficiency-of-the-evidence issue, we look not to whether the State presented evidence that refuted evidence of self-defense, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a

reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914; *Braughton*, 569 S.W.3d at 609.

Copious evidence was presented to simultaneously support the State's case and undermine appellant's version of the facts. Appellant's confession and Farr's testimony that appellant shot Robin is sufficient proof that appellant killed complainant. Velma Farr testified that she saw Robin pulling slowly down the street, not "like a bat out of hell." Farr testified that it was at this point appellant began to yell. She testified that *he* was mad about a jacket. Farr testified that as she continued shuttling back and forth from the house moving items, that *appellant* continued to scream about a jacket. Also contrary to appellant's contention that Robin was yelling at *him* about a jacket, Farr testified that she did not recall Robin getting loud.

Farr also testified seeing appellant reach for a gun, pulled the gun out and point it at Robin. She testified that she was standing beside appellant when he shot Robin. She testified that she began hitting appellant and yelling at him for shooting Robin. In response, she explained that appellant ripped off her necklace. Law enforcement officers did not recover another gun in Robin's car, and no witness could point to anything in Robin's car that might have made a clicking noise. Since verbal provocation alone is not enough to support appellant's self-defense argument, even if we presume the jury believed that Robin and Robin alone was yelling at appellant about a jacket, by its implicit rejection of appellant's self-defense argument—in finding him guilty—the jury necessarily signaled its disbelief in his other remaining self-defense evidence as lacking in credibility. The legal sufficiency standard does not permit us to substitute our view of the credibility of the witness testimony for the jury's. *See Braughton*, 569 S.W.3d at

7

611; see *Saxton*, 804 S.W.2d at 913-14.

Photographs offered by Farr's neighbor, Charles Free, who heard the gunshot and then rushed to see and photograph the two cars outside his window illustrated the orientation of the cars in front of Farr's driveway. Farr and Free both testified to the accuracy of the photographs.

Farr testified that she was afraid and ran down the road to her neighbor's house to call 9-1-1.

Free continued to monitor the aftermath. Contrary to appellant's statement that he had been pinned in by Robin, Free testified that he observed that appellant was able to back his vehicle up and move his vehicle without moving Robin's vehicle.

Free testified that he noticed an individual had entered the passenger side of Robin's vehicle, and that it first looked like there was a physical altercation going on, and that he thought one person was assaulting an animal in the car. Free explained that he then saw the person "drag something from the driver's seat into the passenger seat and get out of the vehicle." He recognized the person exiting to be appellant and that his hands were covered in blood.

Free explained that appellant then left the vehicle and went out of Free's sight, behind a trailer parked on Farr's property. Free explained that he saw appellant go in and out of his view multiple times, at least five times. Free testified that when he saw appellant return to the vehicle the first time appellant repositioned the body and at which time Free recognized the body to be Robin's. Free explained when appellant returned again, appellant began "going through things." Free testified that that he saw appellant take "an object from his vehicle and throw it across the street into the woods." Free's description of events that

occurred after the shooting contradict appellant's contention that he was rushing to save his brother's life and suggest that appellant was attempting to conceal evidence. *See Guevara v. State*, 152 S.W.3d at 50.

Appellant admitted shooting Robin in the cheek at close range. Various law enforcement witnesses fortified the State's case, providing testimony that the scene, the vehicles, the weapons and other evidence, were preserved and recovered, and that observations were made to confirm that appellant shot Robin, did not call 9-1-1, and at worst, took time to conceal evidence, and at best fiddled about the property while Robin died before he drove Robin's body to the hospital. First responder, Officer Fogle taped off the property and noticed blood in a muddy puddle on the property where appellant confessed to washing blood off his hands. Officer Ramsey recovered the firearm and a spent casing were found in Robin's vehicle after appellant drove his body to the hospital. Officer Newsome testified that a DPS report confirmed the gun had been used to shoot Robin, and gunshot residue results confirmed appellant had gunshot residue on his hand.

Farr and her friend, Desteny McCormick, who assisted her in making the 9-1-1 call, confirmed the time when appellant drove by her house, further discrediting appellant's claim of urgency to save Robin's life. The medical examiner, Kikuchi described the close proximity of the shooting; the trajectory of the bullet from Robin's head into his cervical spine; that Robin would have been instantly paralyzed; and that death would have ensued within minutes. *See Watkins v. State*, 333 S.W.3d 771, 781 (Tex. App.—Waco 2010, pet. ref'd) ("Where a deadly weapon is fired at close range and death results, the law presumes an intent to kill.").

We conclude from the evidence that a rational jury could have concluded beyond a reasonable doubt that appellant intentionally or knowingly caused Robin

Baxter's death by shooting him with a firearm, and was not justified in using deadly force. *See id.*; *see also Fountain v. State*, 604 S.W.3d 578, 582 (Tex. App.—Houston [14th Dist.] 2020, no pet.). We therefore overrule appellant's first issue.

## III. EXCLUSION OF EVIDENCE

In his second issue, appellant complains that the trial court erred when it excluded evidence of the decedent's prior convictions and other "bad acts" from appellant's recorded confessions. Prior to trial, the State filed a motion in limine seeking to preclude appellant from injecting certain "matters" about the victim that it argued are "incompetent, irrelevant, or prejudicial to the material issues in this cause." Specifically, the State's seven requests to the Court sought to exclude:

> No. 1: Any reference or allusion to victim, Robin Baxter, being in and out of prison,
>
> No. 2: Any reference or allusion to victim, Robin Baxter, using or having a history of using illegal drugs,
>
> No. 3: Any reference or allusion to victim, Robin Baxter, possessing guns because he is a felon or that he isn't supposed to be around guns,
>
> No. 4: Any reference or allusion to victim, Robin Baxter, breaking into homes and selling stolen items or that he's been fencing a lot of stuff,
>
> No. 5: Any reference or allusion to victim, Robin Baxter, being a prison gang banger, or that he just got out of prison,
>
> No. 6: Any reference to the victim's character pursuant to Rule 404(a) and 608(b), and
>
> No. 7: The arrest for, accusation of, or conviction of criminal charges of any of the State's witnesses until they are relevant to a contested issue in the case or as impeachment evidence.

The relief sought by the motion in limine, as is typical of such motions, was that the court "prohibit Defendant from offering any of this evidence, or making any reference to these matters, without first asking for a ruling from the Court on

the admissibility of the evidence out of the presence of the jury."

Appellant filed a written response to appellant's motion in limine which sets out appellant's intention to make a case for self-defense under sections 9.31 and 9.32 of the Texas Penal Code, and specifically references prior recorded statements. In support, appellant argued that specific acts of violence may be introduced to demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the deceased was the first aggressor. The response also stated that appellant intended to introduce evidence of the deceased's prior convictions. In relevant part, the response states:

> The Defendant intends to introduce into evidence both the Defendant's entire voluntary statement to law enforcement and the following 10 felony and 1 misdemeanor criminal convictions of the deceased:
>
> 1) 9/26/2018; Cause No. 83814-CR; 239th District Court; PCS; 1 year jail
>
> 2) 8/25/2015; Cause No. 1441468; 185th District Court; Theft of Material; 5 years
>
> 3) 8/25/2015; Cause No. 1444257; 185th District Court; PCS; 5 years TDC.
>
> 4) 12/23/2014; Cause No. 2015-404618; 137th District Court; Theft More $200K; 5 years TDC.
>
> 5) 4/20/2012; Cause No. 1327150; 185th District Court; Criminal Mischief; 9 months Jail.
>
> 6) 7/18/2007; Cause No. 5:02CR00628-001; US District Court, PCS; 2 years prison.
>
> 7) 9/9/2002; Cause No. 923375; 174th District Court; PCS; 180 days State Jail.
>
> 8) 1/6/1999; Cause No. 801782; 182nd District Court; Assault; 1 year Jail.
>
> 9) 8/15/1995; Cause No. 699618; 208th District Court; UUMV; 180 days Jail.

10) 2/27/1991; Cause No. 91CR0095; 122nd District Court; Burglary Building; 3 years TDC.

11) 10/15/2018; Cause No. 232915; Brazoria County Court No.3; Criminal Mischief reduced from Assault; 180 days Jail

The Court held a hearing on the motion prior to trial. During the hearing the State began by going through appellant's recorded statements, identifying each portion that the State sought to redact in connection with its motion in limine. During this hearing, appellant requested that he be allowed to provide evidence of decedent's ten prior convictions or "prison trips", and the entire statement on the basis that it put appellant in "reasonable apprehension of what his brother could do and what his brother could have learned over ten trips from 1991 through 2018." The court stated that it disagreed that all such trips would be relevant, and indicated that it was compelled by its understanding of the law "to look at each individual trip as to what it is to whether or not somebody is violent."

The State offered the unredacted recorded statements, Exhibits 14A, 15A, and 49A, as part of the record for purposes of the hearing, and without any significant interruption, referenced by page and line, the various portions of appellant's statements it sought to redact. Then the State concluded with the following argument:

> So State would argue that you can't use specific acts and conduct to prove the character of a person. The Defendant in none of these statements stated that it's because of the actual acts. There was an assault, like I said, but the others, those aren't violent crimes. The thefts, the drugs, the burglary of a building I believe was another punishment. And mention of these acts would be more prejudicial than probative. And I have case law to support that these type of offenses aren't violent in nature, Your Honor.

The Court then gave the floor to appellant's counsel who traced through a series of arguments and cases. Appellant's counsel emphasized the fraternal

12

relationship between appellant and Robin as relevant to implicating the likelihood of appellant's awareness of Robin's prior convictions.

The court commented on the arguments, and there was some discussion about the relevance of some of the convictions, but then proceeded to address the State's enumerated limine request, and ruled on each of the limine request in order, and giving the parties specific guidance as to each request.

At three instances near the close of the hearing, the court stated to the parties, twice specifically addressing appellant's counsel, that the court's rulings were just on the motion in limine and invited appellant's counsel to approach during trial to reurge or if the door was open.

Other than the unredacted recorded statements, neither party offered any other testimony or evidence at the hearing. Though appellant listed Robin's prior convictions in its response, he did not present any proof verifying any conviction or any proof demonstrating that appellant was aware of any of the listed prior convictions. Appellant, relying on his request that the entire statement be admitted and arguments in connection with the discrete motion in limine rulings, did not point to the court to any particular portion the State sought to redact or explain why that portion should be admitted.

The court made a ruling orally on the motion in limine, and signed a marked copy of the motion to indicate its rulings as to the State's requests.

At trial, when the State offered the redacted version of appellant's recorded statements, without approaching the bench or outside the presence of the jury, appellant's counsel objected by reference to his arguments at the motion in limine.

> MR. LINTON: Your Honor, the defense objects according to the issues that were brought up in the pretrial motion, Your Honor.
> THE COURT: All right. I'll overrule those objections and admit 49.

. . .

Mr. MILLER: And, Judge, we've had an opportunity to review State's Exhibit 14 and 15, and we would object to State's Exhibit 14 and 15 as they are being submitted based on the reasons previously taken up outside the presence of the jury.

THE COURT: All right. I'll overrule those objections and I'll admit State's Exhibit 14 and 15.

The State contends that appellant failed to preserve error as to his complaint that the trial court committed harmful error in excluding "communicated character" evidence of Robin's bad acts known to appellant.

*Did appellant preserve error as to his complaint?*

To preserve error, the record must demonstrate appellant made a timely request with enough specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1. A party may claim error in a trial court's exclusion of evidence if the error affects a substantial right and a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context. Tex. R. Evid. 103(a)(2). This requirement allows the trial court to reconsider its ruling in light of the actual evidence and makes it possible for an appellate court to determine whether the exclusion is erroneous and harmful. *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009); *Kitchens v. State*, No. 01-18-00518-CR, 2019 WL 6482408, at *8 (Tex. App.—Houston [1st Dist.] Dec. 3, 2019, pet. ref'd).

A motion in limine is a preliminary matter and normally preserves nothing for appellate review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). For error to be preserved with regard to the subject of a motion *in limine,* an objection must be made at the time the subject is raised during trial. *Id.*; *See also Allen v. State*, 473 S.W.3d 426, 442 (Tex. App.—Houston [14th Dist.] 2015, pet. granted). Along these lines this court has enforced the proposition that "a ruling on

14

a State's motion in limine that excludes defense evidence is subject to reconsideration throughout trial and that to preserve error an offer of the evidence must be made at trial." *Allen v. State*, 473 S.W.3d 426, 442 (Tex. App.—Houston [14th Dist.] 2015, pet. granted) citing *Warner v. State,* 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Apart from a party's subsequent proffer at trial, this court has only deviated from this preservation principle with respect to a motion in limine when it construes a party's motion as something other than a motion in limine. *Foreman v. State*, No. 14-21-00076-CR, 2022 WL 1041133, at *3 (Tex. App.—Houston [14th Dist.] Apr. 7, 2022, no pet. h.); *see Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) ("[w]hen the court, out of the jury's presence, hears and overrules objections to evidence, those objections need not again be made before the jury when the evidence actually is presented to the jury"); *see also Geuder v. State*, 115 S.W.3d 11, 14 n.10 (Tex. Crim. App. 2003) (although the grant or denial of a true motion in limine does not preserve an issue for appellate review, the denial of a motion to exclude evidence, regardless of its mislabeling, was an adverse final ruling that preserved error for appeal).

A party complaining of the court's exclusion of evidence must comply with Rule 103(a)(2) and make an "offer of proof," unless the substance of the evidence was apparent from the context within which questions were asked. Tex. R. Evid. 103(a)(2); *Allen*, 473 S.W.3d at 442. The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form. If the offer of proof is made in the form of a statement, the proffer must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible. *Mays v. State,* 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).

Appellant did not attempt to prove up any of Robin's convictions. Rather, appellant's counsel only listed Robin's prior convictions in his response, without reference to any verified record or custodial affidavit of Robin's past offenses. Before trial, appellant requested (outside the presence of the jury) that the court include his complete, unredacted, statements. And though appellant did not tender the proffer, the State had traced through every portion it sought to redact, so the court was made specifically aware of the testimonial statements appellant sought to have admitted.

The record shows that the appellant first sought to have his statement offered in evidence through his response to the State's motion in limine. Even if his response and presentation at the motion in limine hearing constituted a proffer, *Allen* and *Warner*, suggests that appellant was required to make the proffer *at trial*. *See Allen*, 473 S.W.3d at 442; *see also Warner,* 969 S.W.2d at 2. At trial, appellant objected to the redacted copy of his statement at trial by reference to his arguments at the motion in limine hearing; but appellant did not make a proffer. Our precedent lends to the conclusion that the evidentiary exclusion complaint was not preserved. Nevertheless, we leave this matter unresolved to address the merits.[1]

*Did the trial court erroneously exclude the evidence of Robin's prior bad acts?*

Presuming appellant preserved error as to the exclusion of the communicated character evidence, we consider whether the court erred in

---

[1] The record provides some distinguishing facts that could favor finding appellant preserved his evidentiary issue, or at least the part of it that relates to the exclusion of the unredacted statements. Although neither attorney (nor the court) is on record for mentioning the unredacted recorded statements at trial, each are listed in the reporter's record index, indicating that unredacted copies were tendered to the court (e.g., Exh. "49A DVD-Unredacted (Not for Jury)") at the same time that the redacted copies were offered and admitted. These unredacted copies were also included as a part of the appellate record, and are thus available for our review. In the interest of deciding this matter on the merits, we withhold a decision whether appellant's complaint of error in the exclusion of evidence was preserved.

determining it was not relevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Tex. R. Evid. 401. Generally, evidence of a person's character is not admissible to prove that on a particular occasion the person acted in accordance with the character. Tex. R. Evid. 404(a)(1). But, a defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the decedent's violent character. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Specific violent acts of misconduct by the decedent may be admitted to show (1) the reasonableness of the defendant's fear of danger, or (2) that the deceased was the first aggressor. *Id.* Under both theories for admission, specific acts are admissible only to the extent that they are relevant for a purpose other than character conformity. *Id.*

In the context of proving the reasonableness of the defendant's apprehension of danger, the decedent's specific violent acts may be relevant to show the defendant's state of mind. *See id.* at 760 n.4. The defendant must show that he or she was aware of the decedent's acts of violence. *Id.* To be admissible, the specific violent acts must be probative of the reasonableness of the defendant's apprehension of danger. *See Allen*, 473 S.W.3d at 448–49.

In *Fish v. State*, defendant charged with the murder of his mother, (driving his vehicle at her as she stood in his driveway), claimed self-defense and asserted that this was based on evidence that the defendant had a reasonable apprehension of danger. 609 S.W.3d 170, 179 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). During trial, the defendant made an offer of proof on the subject, presenting a witness who testified about specific instances of the defendant's mother's violent conduct, and put forth proof that the defendant knew of the incident described. *Id.* The court found this was sufficient to preserve error. *Id.* But in assessing the

17

proffer and considering basis for its admission, the court determined the evidence of the victim's prior act of violence was not probative of the reasonableness of the defendant's apprehension of danger. The court explained the defendant's recorded statement was unhelpful in showing how the prior assault prompted his apprehension of danger when he drove his car at his mother. *Id*. The mother's assault against her boyfriend was dissimilar and unrelated to the events leading to the decedent-mother standing at the threshold of the defendant's garage. *Id*.

Most of the crimes appellant alleged Robin committed were not of a violent nature, and no proof, other than by mere reference to their fraternal relationship, was provided showing that appellant was specifically aware of any of the prior convictions so as to give appellant a basis to fear Robin under the circumstances described that preceded the shooting. Thus, this case is even weaker than *Fish* because here appellant has not attempted to provide other witnesses to illustrate appellant's knowledge of the alleged acts.

*Even if error was preserved and even if the trial court erred in excluding the evidence, was appellant harmed by that exclusion?*

Even if after presuming appellant preserved his complaint, we also presume that the trial court erred in excluding evidence of Robin's prior convictions and redacted portions of his statements to the police, we would conclude that the error was harmless. Standards for reversible error in criminal cases depend on whether the error is constitutional or non-constitutional. *See* Tex. R. App. P. 44.2; *Mercier v. State*, 322 S.W.3d 258, 261 (Tex. Crim. App. 2010). Errors made sustaining the State's objections to the admission of a defendant's evidence generally are non-constitutional. *Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014). A constitutional violation may arise only if "(1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable

18

evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Id.*

Appellant contends that the exclusion of portions of appellant's statements about Robin's prior specific violent acts is constitutional error because the ruling prevented him from presenting his self-defense claim. Specifically, he argues that "excluding the specific reasons provided by the Defendant would undermine his self-defense claim and limit his defense to a solitary statement that he shot the [Robin] in self-defense." On this record, we disagree.

Even as redacted, appellant's statement to the police included his statement that he knew Robin possessed a 9-millimeter and a shotgun, that Robin had driven in "like a bat out of hell," parked in a manner that obstructed appellant's ability to leave, that based on what appellant could see and hear, Robin appeared to be reaching for a gun. Appellant's counsel also elicited testimony from two other witnesses which characterized Robin as "fighter" and "violent". Additionally, without additional details, Farr also informed the jury that Robin had been to prison. Appellant's counsel presented evidence through the medical examiner that Robin had narcotics in his system that could have made him aggressive. In closing his counsel argued that appellant Robin was coming at appellant "yelling and screaming about some 60 [dollar] debt on a coat. . .He knows his brother. He's scared." We therefore, conclude that the alleged errors were non-constitutional. See *Seidule v. State*, 622 S.W.3d 480, 493-94 (Tex. App.—Houston [14th Dist.] 2021, no pet.)(concluding any harm in exclusion of proposed testimony of specific violent acts was non constitutional error when jury had heard other evidence of deceased violent tendencies, his prior assault of the defendant, his possession of a firearm, that he was on felony probation for stalking, that his autopsy report

revealed his blood-alcohol level was over the legal limit when he died and had other intoxicating substances in his body and when his counsel argued in closing that the deceased was a violent person and that the defendant was afraid of the deceased).

Non-constitutional errors that do not affect the defendant's substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b); *Green*, 589 S.W.3d at 261 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *See Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (citation and internal quotation marks omitted). When we assess the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including all evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, and whether the State emphasized the error. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002); *see also Haley*, 173 S.W.3d at 518-19.

Any error made in excluding testimony of Robin's specific violent acts did not have a substantial and injurious effect or influence in determining the jury's verdict. As described above, the jury heard significant evidence relevant to and supporting appellant's self-defense claim, including evidence of Robin's violent character and use of mind-altering narcotics at the time. The trial court permitted portions in the statement concerning Robin's ownership of guns and that he had

20

been flying down the road "like a bat out of hell". Varney opined that Robin was violent; Farr, that Robin was a "fighter." The autopsy report and medical examiner testimony aided appellant's defense because they revealed that he had been on toxic levels of meth, and other narcotics substances in his body. See *Seidule v. State*, 622 S.W.3d at 493–94. Finally, appellant's counsel was able to focus on the facts supporting the self-defense.

The jury was free to disagree with appellant's claim that he acted in self-defense. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997) (indicating that jury has sole province to decide what weight is to be given to contradictory testimony as it turns on evaluation of credibility and demeanor). The trial court's exclusion of portions of appellant's statements to the police including evidence of Robin's prior violent acts did not substantially injure appellant's rights, and the error, if any, was harmless. *See Green*, 589 S.W.3d at 262 ("Accordingly, the jury heard plenty of other evidence concerning the decedent's threats and animosity toward appellant."); *Smith*, 355 S.W.3d at 151-52 (explaining that, because the appellant offered other direct evidence that the decedent was the first aggressor and that the appellant reasonably believed he was in danger during his altercation with the decedent, the court had "fair assurance here that any error made in excluding [the decedent's] earlier stabbing incident ... did not have a substantial and injurious effect or influence in determining the jury's verdict"); *Seidule*, 622 S.W.3d at 494.

We therefore overrule appellant's second issue.

## IV. CONCLUSION

Having overruled appellant's two issues, we affirm the judgment of the trial court.

/s/     Randy Wilson
        Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b)